IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 42398

STATE OF IDAHO,

    Plaintiff-Appellant,

v.

BENITO RAZO-CHAVEZ,

    Defendant-Respondent.

 )
 )  **Twin Falls, November 2015 Term**
 )
 )  **2016 Opinion No. 1**
 )
 )  **Filed: January 6, 2016**
 )
 )  **Stephen W. Kenyon, Clerk**
 )
 )
 )

Appeal from the District Court of the Fifth Judicial District of the State
Of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

This appeal is <u>dismissed</u>.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for appellant.
Kenneth K. Jorgensen argued.

The Roark Law Firm, Hailey, attorneys for respondent. Doug Nelson
argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

Appellant, the State of Idaho (the "State"), appeals from the conviction of Benito Razo-Chavez ("Defendant") for one count of possession of oxycodone. The State does not challenge the outcome of the case and does not seek to overturn the verdict or sentence; rather, the State challenges the propriety of the district court's jury instruction regarding the elements of possession of a controlled substance under Idaho Code section 37-2732(c). Specifically, the instructions provided to the jury by the district court stated the *mens rea* element of possession of a controlled substance as "the defendant either knew it was oxycodone *or believed it was oxycodone*." (emphasis added). The State argues that this instruction was improper and should have stated the *mens rea* element as "the defendant either knew it was oxycodone or *believed it was a controlled substance*." (emphasis added). In other words, the State asserts that Defendant did not have to believe that the substance possessed was oxycodone to be guilty of possession of

1

oxycodone, but needed only to believe that the substance possessed was a controlled substance (in this case buprenorphine).

## II. FACTUAL AND PROCEDURAL BACKGROUND

On November 2, 2013, police pulled Defendant over for a speeding infraction. The officer conducting the stop smelled marijuana, which provided legal grounds to search Defendant's vehicle. During the search, officers found a plastic bag containing a straw and the residue of an orange powder. After initially claiming that the plastic bag had been used to hold "Smarties," Defendant voluntarily admitted that the residue was Suboxone, a brand name drug commonly used to treat opiate addiction.

While there was not initially enough residue in the plastic bag for an accurate test using a gas chromatograph mass spectrometer, a forensic scientist was able to obtain a sample by rinsing the bag with methanol. The residue tested positive for two controlled substances: oxycodone and buprenorphine, the latter of which is an active ingredient in Suboxone. The State charged Defendant with one count of felony possession of oxycodone.

At trial, Defendant testified that a year earlier he had been prescribed Vicodin for his teeth, which he had continued to use after it was no longer necessary for pain management. He further testified that when he attempted to quit using Vicodin he had suffered adverse physical symptoms, which had led him to seek out the Suboxone from a friend. Defendant alleged he was unaware of the presence of oxycodone in the bag and noted that it would make little sense to combine oxycodone and Suboxone because Suboxone nullifies the effects of opiates. There was no evidence that one could visually detect that the bag residue consisted of two substances mixed together. This testimony was corroborated by one of the police officers, who testified that the contents of the bag appeared to be Suboxone, and noted that Suboxone would not typically be mixed with an opiate such as oxycodone.

Based on this testimony, Defendant argued that he could not be convicted of felony possession of oxycodone because he had only believed that he possessed buprenorphine—a misdemeanor offense—and had been completely ignorant of the presence of oxycodone.

At trial, the State proposed that the district court provide the jury with Idaho Criminal Jury Instruction 403, which states the elements of possession of a controlled substance as follows:

1. On or about [date]

2

2. In the state of Idaho

3. The defendant [name] possessed any amount of [name of substance], and

4. The defendant either knew it was [name of substance] or *believed it was a controlled substance*.

ICJI 403; R. at 82 (emphasis added).

The Idaho Criminal Jury Instructions are a set of jury instructions that have been explicitly approved by this Court. *See* Idaho Supreme Court, Order (August 26, 2010). While lower court judges are permitted to alter the language of an approved instruction where a different instruction would more adequately, accurately, or clearly state the law, adherence to the Idaho Criminal Jury Instructions is recommended.

Over the State's protest, the district court expressly rejected Idaho Criminal Jury Instruction 403 and instead provided its own instruction, which differed sharply on the *mens rea* element. Specifically, the district court instructed the jury that in order for Defendant to be guilty of possession of a controlled substance, the jury must find that "the defendant either knew it was oxycodone or *believed it was oxycodone*." (emphasis added). At trial, the district court judge explained this departure from Idaho Criminal Jury Instruction 403; arguing that it "[turns] the drug statute into a strict liability crime." "[H]ow can he be guilty of having been charged with possession of oxycodone because he believed he had Suboxone?" the district court judge posited, "[t]hat makes no sense to me."

Despite the district court's narrowed instruction on the *mens rea* element, the jury convicted Defendant of one count of possession of oxycodone. The court imposed a four year suspended sentence with two years determinate.

The State of Idaho appealed—seeking a ruling that the district court's jury instruction was given in error. The State does not seek to vacate the district court's ruling, alter the sentence, or retry the case. The only result sought by the State is the prevention of similar jury instructions in the future.

### III. ISSUES ON APPEAL

1. Whether the propriety of the jury instruction is a moot issue.

2. Whether the district court erred by giving an improper jury instruction.

### IV. STANDARD OF REVIEW

Whether a jury was properly instructed is a question of law over which this Court exercises free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009).

3

## V. ANALYSIS

**A. There is no need for this Court to determine if the jury instruction given by the district court was error, because such an error would be harmless.**

Idaho Criminal Rule 52 provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." I.C.R. 52. "The determination of whether a substantial right has been affected hinges on whether it appears from the record that the error contributed to the verdict." *State v. Thompson*, 132 Idaho 628, 636, P.2d 890, 898 (1999); *State v. Parker,* 157 Idaho 132, 140, 334 P.3d 806, 814 (2014) (internal citations and quotations omitted). "An error is harmless if, and only if, the appellate court is able to say, beyond a reasonable doubt, that the jury would have reached the same result absent the error." *Id; Chapman v. California,* 386 U.S. 18, 24 (1967); *State v. Johnson,* 148 Idaho 664, 669, 227 P.3d 918, 923 (2010).

Here, it is indisputable that the jury would have reached the same result under either Idaho Criminal Jury Instruction 403 or the jury instruction given by the district court because the jury convicted Defendant of felony possession of a controlled substance under the narrower of the two instructions. It is beyond a reasonable doubt that no jury, having found that Defendant knew or believed that he was in possession of oxycodone, could have found that Defendant did not know that he was in possession of a controlled substance. Accordingly, any alleged error was harmless.[1]

**B. There is no need for this Court to address whether this appeal is barred by the mootness doctrine.**

Because any alleged error in the jury instruction given by the district court is harmless error, there is no need for this Court to conduct a mootness review.

## VI. CONCLUSION

We dismiss this appeal. If the district court committed error, such error was harmless.

Chief Justice J. JONES and Justice HORTON, CONCUR.


Justice EISMANN, concurring.

---

[1] This Court could use its plenary power under article 5, section 9 of the Idaho Constitution to review the jury instruction regardless of the harmless error analysis herein; however, no party has requested that the Court do so here and it is far from clear that an exercise of plenary power would be appropriate.

I concur in the majority opinion, but write to further explain the district court's actions. The jury instruction used by the district court in this case was apparently based upon the unique set of facts presented.

While searching Defendant's car, an officer found a small plastic baggie that contained an orange powder. When confronted, Defendant initially stated that the orange powder was Smarties candy, but then admitted it was Suboxone, which he was using to come down from an opiate dependency. He stated that he had purchased Suboxone pills from a friend.

The forensic scientist who tested the contents of the baggie testified that she first took a small portion of the residue in the baggie and placed it in a preliminary test reagent, which turned purple indicating the presence of opiates. She testified that Suboxone contains buprenorphine, which is an opiate, and naloxone, which is not a controlled substance. She then took another sample of the orange residue and analyzed it using a gas chromatograph mass spectrometer (GCMS), but there was not enough of the sample to produce an accurate result. She then obtained a sample by rinsing the baggie with methanol and ran that sample through the GCMS. This test revealed the presence of both buprenorphine and oxycodone.

Defendant testified that about a year earlier he had been prescribed Vicodin for his teeth. He liked the feeling and continued using it after the pain went away. He ultimately decided to quit using the Vicodin, but had adverse physical symptoms when he did so. He talked to a friend about his situation, and the friend provided some Suboxone. He testified that the baggie seized by the police was the same baggie in which he had received the Suboxone and that he did not know that there was any oxycodone in it.

There was no evidence that one could visually detect that the baggie residue consisted of two substances mixed together. The small amount of residue was one color—orange. The officer who discovered the baggie testified that the residue in the baggie looked like Suboxone and he had no reason to believe it was anything other than Suboxone.

The other officer who participated in the search testified that if someone was taking Suboxone and an opiate, the Suboxone would cancel out the effect of the opiate. When asked whether it would be completely stupid to mix Suboxone and an opiate to try and get high, he answered, "I would agree you wouldn't use them typically together." The forensic scientist testified that oxycodone is an opiate, but she did not opine as to the quantity of oxycodone necessary in order to be detected by the GCMS.

5

The crime of possession of a controlled substance "requires 'the *knowledge that one is in possession of the substance*,' and either knowledge of the identity of the substance (e.g., in this case that it was methadone) or knowledge that the substance was a controlled substance." *State v. Neal*, 155 Idaho 484, 487, 314 P.3d 166, 169 (2013) (emphasis added). The district court's concern was that the standard instruction would be interpreted as instructing the jury that if Defendant was knowingly in possession of a controlled substance (Suboxone), he would be guilty of possessing any other controlled substance that happened to be mixed in with the Suboxone, even if he did not know, and could not know, that there was some other controlled substance mixed in with the Suboxone, particularly where possession of Suboxone is a misdemeanor and possession of oxycodone is a felony. The Court stated:

> And the particular language at issue is that the fifth—I think the fifth element is that the State is required to prove that the defendant either knew that the substance in this case was oxycodone or believed it was a controlled substance. And the inartful use of the word is what is causing a problem here. The State's interpretation of that is that that means any substance; the defense's interpretation means the substance that we're talking about in this case, and I think that is a critical issue here.

With the district court's altered jury instruction, the jury still found Defendant guilty of possession of oxycodone. The district court's instruction was based upon the unique facts of this case, and there is no indication that the court intends to give the same instruction in all future cases involving the possession of a controlled substance.

Justice BURDICK joins in this special concurrence.

6