## IN THE SUPREME COURT OF THE STATE OF IDAHO

**Docket Nos. 46565/46566**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| Plaintiff-Respondent, | ) Boise, February 2021 Term |
| v. | ) Opinion Filed: May 20, 2021 |
| JUSTIN LEE ANDERSON, | ) Melanie Gagnepain, Clerk |
| Defendant-Appellant. | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Deborah A. Bail, District Judge.

The decisions of the district court are <u>affirmed in part</u> and <u>reversed in part</u>. The judgment is <u>vacated</u> and the case is <u>remanded</u>.

Eric D. Frederickson, State Appellate Public Defender, Boise, for Appellant. Elizabeth A. Allred argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kacey L. Jones argued.

_____

BURDICK, Justice.

This case, arising from the Ada County district court, concerns joinder of charges against a defendant and the admission of evidence under Idaho Rule of Evidence 404(b). Justin Lee Anderson appeals from his convictions for lewd and lascivious conduct with a minor under the age of sixteen, sexual abuse of a child under the age of sixteen, and multiple counts of sexual exploitation of a child. He challenges the district court's denial of his motion to sever, admission of Rule 404(b) evidence against him, and delivery of a jury instruction on deliberation that varied from the standard instruction. We affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May of 2017, a five-year-old child, L.H., disclosed to her family-friend and babysitter that her former stepparent, Justin Anderson, had sexually abused her. L.H.'s mother ("Mother") and Anderson were briefly married and lived together with L.H. from January to late February or

1

early March of 2017. The babysitter immediately reported the suspected abuse to the Department of Health and Welfare ("DHW"). DHW referred the matter to Detective John Lau of the Boise Police Department for investigation. Detective Lau spoke with the babysitter and Mother about L.H.'s disclosure and scheduled a forensic interview for L.H. at St. Luke's hospital with the Children at Risk Evaluation Services ("CARES") program. At CARES, L.H. again made disclosures concerning Anderson and underwent a physical examination for signs of abuse.

While the contents of her first interview with CARES were excluded as inadmissible hearsay, L.H. testified at trial concerning her abuse allegations, which remained largely the same as those in the CARES interview. L.H. testified that Anderson used his hands to touch her "vagina and butt"; that Anderson made her touch his penis with her hands; that Anderson ejaculated on her stomach; that Anderson made her put her lips on his penis; that Anderson showed her pictures of adults and children having sex on his phone and laptop; that Anderson used a back massager to touch her vagina; that Anderson touched "the inside" of her "bum" with his hand; and that Anderson took pictures of her vagina with his phone.

After learning of L.H.'s allegations in the CARES interview, Detective Lau obtained search warrants for Anderson's electronic devices, including his cell phone and laptop computer. However, those warrants were never executed, and the devices never seized, because Detective Lau could not locate Anderson, who was experiencing homelessness and lived in his van.

It appears that Anderson did not have further contact with law enforcement until nearly half a year later, when Boise police officers responded to an incident involving Anderson and a female companion. The female companion and Anderson met in December of 2017 while staying at a homeless shelter and quickly began a romantic relationship. The relationship deteriorated once Anderson started to show the female companion pornographic images on his cell phone, many of which she believed to be of children. She also described Anderson telling her about his sexual fantasies, including his desire to have a "harem" of women with some being as young as ten years old. The female companion testified that Anderson's sexual preference for children was "the younger, the better" and that he referred to the children in the pornographic images he showed her as "littles." Among the images Anderson showed the female companion were some that he claimed to have taken himself, including one of an approximately six-year-old girl he identified as "his ex's daughter."

2

The female companion was disturbed by the images and grew to fear Anderson. As time went on, the female companion resolved to leave the relationship and shared with her ex-boyfriend that Anderson had shown her child pornography. She also told her friend about the suspected child pornography on Anderson's phone. Then, on December 27, 2017, the female companion broke up with Anderson and began to remove her possessions from Anderson's van with the help of her ex-boyfriend and the friend. This precipitated an argument, which led to Anderson calling 9-1-1. Officers from the Boise Police Department responded to the fracas and questioned individuals at the scene. When officers questioned the friend, he told them that Anderson had child pornography on his cell phone and that it was "something they needed to look into." The friend also told officers that he overheard Anderson tell the female companion that he had "deleted it all." The responding officers searched Anderson's van and seized his phone, flash drives, an external hard drive, and a backpack containing a laptop.

The investigation was referred to Special Victims Unit Detective Tim Brady, who had experience investigating child pornography and sex abuse cases. That night, Detective Brady interviewed the female companion, who told him Anderson had child pornography on his phone. She claimed Anderson had boasted that he had taken pornographic photos of "his ex's daughter." The female companion also described a "calculator application" on Anderson's phone where he stored pornographic images. Detective Brady could not find that application specifically but did discover an application called "SecurePad" on Anderson's phone, which could be used to store encrypted photos or videos. The SecurePad application was password protected but Detective Brady was able to gain access using a password provided by the female companion. The female companion did not know the exact password but provided Detective Brady with two possible passwords. Upon gaining access to SecurePad, Detective Brady discovered multiple files of what appeared to be child pornography. Detective Brady also checked if there were other active investigations into Anderson and learned of Detective Lau's investigation started in May of 2017 concerning L.H.'s allegations of abuse.

As part of Detective Brady's investigation, Anderson's phone, laptop, external hard drive, and flash drives were sent to the Intermountain West Regional Computer Forensic Lab for in-depth forensic examination. That examination yielded tens of thousands of suspected images of child pornography and hundreds of videos on the various devices seized from Anderson. On Anderson's phone, stored amongst nearly two hundred images of suspected child pornography,

3

was a pornographic photograph of L.H. The examination of Anderson's phone also extracted information relating to Anderson's account on Tumblr, a social media website that allows users to chat, share pictures, and blog. Data from Anderson's Tumblr account indicated that he had been searching for child pornography related terms and had downloaded graphic stories detailing the sexual abuse of children. Investigators also found child pornography related search terms in the internet search history on Anderson's phone.

The forensic examination of Anderson's devices coupled with L.H.'s allegations of abuse, led the State to obtain a twenty-one count indictment against Anderson on February 8, 2018. Counts I through III of the indictment concerned Anderson's conduct with L.H. (the "L.H. charges"). Specifically, Anderson was charged with lewd and lascivious conduct for sexually touching L.H., sexual abuse of a child for showing L.H. pictures of adult and child pornography, and sexual exploitation of a child for producing pornographic images of L.H. In count IV, the State charged Anderson with sexual exploitation of a minor for publishing child pornography to the female companion during their relationship (the "publication charge"). This allegation did not specifically identify the image or images Anderson published to the female companion, but she recalled Anderson telling her that one image was of "his ex's daughter" and described an image of L.H. on Anderson's phone. Finally, counts V through XXI of the indictment charged Anderson with sexual exploitation of a child for possessing pornographic images and videos of unidentified children (the "possession charges"). The State did not allege that the images and videos that formed the foundation of the possession charges were specifically related to Anderson's conduct with L.H. Rather, the State indicated at trial that the possession charges were simply a representative sample and that it could have charged any or all of the thousands of images and videos uncovered in the examination of Anderson's devices.

In addition, Detective Brady submitted the suspected child pornography from Anderson's devices to the National Center for Missing and Exploited Children ("NCMEC") for further evaluation. NCMEC is a private, non-profit organization established by Congress that assists child pornography investigations by, among other functions, identifying victims depicted in suspected pornographic images and videos. Sometime after the State filed its first indictment against Anderson, analysts from NCMEC informed the Boise Police that they had discovered seven additional pornographic images of L.H. on Anderson's hard drive stored in a folder with her name.

Subsequently, on May 8, 2018, the State obtained a second indictment against Anderson, charging him with fourteen[1] additional counts of sexual exploitation for the images of L.H. discovered on the hard drive following the first indictment. After obtaining the second indictment, the State and Anderson stipulated to the consolidation of the charges in the indictments but Anderson reserved his right "to file a motion to sever the counts in both cases related to L.H." from those counts that involved images or videos of unidentified children. The district court consolidated the cases.

Anderson then filed a motion to sever the possession and publication charges from the L.H. charges. Anderson made his motion to sever under Idaho Criminal Rule 14 ("I.C.R. 14"); however, he argued that joinder was inappropriate under both I.C.R. 8 and I.C.R. 14. The district court heard oral argument on the motion and denied Anderson's motion to sever from the bench, reasoning that evidence of the possession and publication charges would be relevant to and corroborative of the L.H. charges.

Following the district court's order to consolidate, the State disclosed various pieces of evidence it sought to introduce at trial pursuant to Idaho Rule of Evidence 404(b). The State argued for the admission of evidence concerning the amount of child pornography on Anderson's devices, hand-drawn images of sexualized children seized from Anderson at the Ada County jail, images from the SecurePad application on Anderson's phone, information from Anderson's Tumblr account, and the search history on Anderson's phone. Except for the search history evidence, Anderson objected to the admission of this evidence on Rule 404(b) grounds. The district court allowed the evidence concerning the amount of child pornography on Anderson's devices and the sexualized drawings in a pre-trial ruling. The district court did not rule on Anderson's objections to evidence from the SecurePad application, information from his Tumblr account, and search history on his phone before the trial, but did individually rule to admit each piece of evidence as it was offered during trial.

At the conclusion of trial, during the jury instructions conference, Anderson requested the district court to deliver the entire standard criminal jury instruction on deliberation. The district court declined, reasoning that it was too repetitive.

---

[1] For reasons unexplained in the record, the State filed two identical charges for each additional image of L.H. discovered on Anderson's devices. Prior to trial, the duplicate charges were removed leaving only seven charges for newly discovered pornographic images of L.H.

5

The jury returned guilty verdicts on all the charges. The district court subsequently sentenced Anderson to a fixed life sentence for the lewd conduct with a minor count in addition to various consecutive and concurrent sentences for the remaining L.H. charges, publication charge, and possession charges. Anderson moved for a reduction in his sentence, which the district court denied.

Anderson timely appealed from the district court's judgment of conviction and order of commitment, challenging the joinder of charges against him, various evidentiary rulings, and the delivery of a jury instruction that deviated from the standard instruction.

## II. ISSUES ON APPEAL

1. Did the district court properly deny Anderson's motion to sever?
   a. Were the charges against Anderson properly joined under I.C.R. 8(a)?
   b. Did the district court abuse its discretion in denying Anderson's motion to sever under I.C.R. 14?
2. Did the district court abuse its discretion in admitting evidence under Idaho Rule of Evidence 404(b)?
3. Did the district court err in delivering a jury instruction on deliberation that differed from the standard instruction?
4. Have there been numerous errors constituting cumulative error?

## III. STANDARD OF REVIEW

In considering motions to sever under Idaho Criminal Rules 8 and 14, this Court employs a two-part standard of review. *State v. Nava*, 166 Idaho 884, 889–90, 465 P.3d 1123, 1128–29 (2020). Assuming both issues are preserved for appeal,

> [t]his Court will first analyze whether joinder was permissible under I.C.R. 8. This Court exercises free review over this determination. If joinder is determined to be proper, this Court then turns to whether that proper joinder was prejudicial to either party. This Court reviews this determination for an abuse of discretion.

*Id.* at 890, 465 P.3d at 1129 (citations and footnote omitted).

Similar to evaluating severance under I.C.R. 14, a district court's admission of evidence under I.R.E. 404(b) is reviewed according to an abuse of discretion standard. *State v. Grist*, 147 Idaho 49, 51, 205 P.3d 1185, 1187 (2009). Under that standard, this Court asks, "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v.*

6

*Villa-Guzman*, 166 Idaho 382, 384, 458 P.3d 960, 962 (2020) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

As concerns jury instructions, "[w]hether the jury has been properly instructed is a matter of law over which this Court exercises free review." *State v. Mann*, 162 Idaho 36, 40, 394 P.3d 79, 83 (2017) (quoting *State v. Adamcik*, 152 Idaho 445, 472, 272 P.3d 417, 444 (2012)). This Court considers whether, as a whole, the jury instructions "fairly and adequately present the issues and state the applicable law." *Id.* (quoting *Adamcik*, 152 Idaho at 472, 272 P.3d at 444).

## IV.    ANALYSIS

**A.  The district court did not err in denying Anderson's motion to sever.**

Anderson argues that joinder of the charges against him was improper under both Idaho Criminal Rules 8 and 14 because the offenses charged were not part of a common scheme or plan and joinder caused him prejudice. The State responds by arguing (1) Anderson's claim that joinder was improper is barred by the invited error doctrine; (2) the charges were properly joined under I.C.R. 8 because they were connected; and (3) the joinder was not prejudicial because the evidence of any count could have been admitted at a separate trial for the other counts.

1.  Anderson did not invite any error in the joinder of charges against him.

Under the doctrine of invited error, "one may not successfully complain of errors one has acquiesced in or invited." *State v. Godwin*, 164 Idaho 903, 925, 436 P.3d 1252, 1274 (2019) (quotation and citation omitted). In other words, "[a] defendant 'may not consciously invite district court actions, and then successfully claim these actions are erroneous on appeal. Nor may a criminal defendant successfully allege error in a ruling of the court, when the defendant himself requested the ruling.'" *Id.* (quoting *State v. Owsley*, 105 Idaho 836, 837, 673 P.2d 436, 437 (1983)).

The State argues that Anderson's stipulation to consolidate the charges against him is a concession that joinder was proper in the first instance. We conclude that Anderson's claim that the charges against him were improperly joined is not barred by the doctrine of invited error. The State's first indictment included the L.H. charges, the publication charge, and the possession charges. The State's second indictment exclusively contained charges related to the pornographic images of L.H. found on Anderson's hard drive after the first indictment. Anderson's stipulation to consolidate only concerned whether the charges in the first and second indictments should be joined, and he reserved the right to file a motion to sever the publication and possession charges

from the L.H. charges. In other words, Anderson did not stipulate to the joinder of all the charges in the first indictment, which forms the basis of his assignment of error. Thus, Anderson has not invited any error and this Court will review the merits of the issue.

   2.   The charges were properly joined under I.C.R. 8(a).

I.C.R. 8 provides that more than one offense may be charged in the same indictment if those offenses "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." I.C.R. 8(a). "In reviewing whether joinder was proper, appellate courts may consider what was alleged by the State, not merely what the proof at trial ultimately showed." *State v. Nava*, 166 Idaho 884, 891, 465 P.3d 1123, 1130 (2020) (citing *State v. Field*, 144 Idaho 559, 565, 165 P.3d 273, 279 (2007)). That is, "courts may consider information other than what is contained in the charging documents to determine whether joinder is proper under I.C.R. 8." *Id.* (citing *Field*, 144 Idaho at 565 n.3, 165 P.3d at 279 n.3).

"It is a difficult burden for the State to establish that the similarities between two charges demonstrate a common scheme or plan when it comes to sexual abuse crimes." *Id.* at 892, 465 P.3d at 1131. Joinder under a common scheme or plan theory requires "two or more crimes *so related to each other* that proof of one tends to establish the other." *Id.* at 891, 465 P.3d at 1130 (emphasis in original) (quoting *State v. Johnson*, 148 Idaho 664, 668, 227 P.3d 918, 922 (2010)). Satisfying this standard requires that the joined charges "go beyond merely showing a criminal propensity and instead must objectively tend to establish that the same person committed all the acts." *Johnson*, 148 Idaho at 668, 227 P.3d at 922 (citations omitted). With respect to sexual abuse crimes, "at a minimum, there must be evidence of a common scheme or plan beyond the bare fact that sexual misconduct has occurred with children in the past." *Id.*

We conclude that joinder of the publication and possession charges with the L.H. charges was appropriate under I.C.R. 8(a) because the allegations in the indictments and the information in the record demonstrate a common scheme or plan. L.H.'s allegations, both before and during trial, included assertions that Anderson showed her images of child pornography while he sexually abused her. Further, Jones's testimony indicated that Anderson would look at pornographic images of children while engaging in sexual intercourse. In sum, the allegations against Anderson suggested that he used child pornography as stimulation, particularly during his abuse of L.H. and, thus, possession of child pornography was part and parcel of his abuse of

8

L.H. Further, that Anderson took sexualized photos of L.H., which he stored on his devices near other suspected images of child pornography, suggests that his sexual abuse of L.H. was integral to his plan to possess child pornography. Finally, the female companion indicated that Anderson showed her pornographic images of "his ex's daughter," which he claimed to have taken himself. These allegations demonstrate that the publication charge was part of a common scheme to abuse L.H. and possess images of her for his own sexual gratification. Accordingly, joinder of the charges against Anderson was not in error because the allegations in the charges and the information in the record demonstrate that the charges were part of a common scheme of sexual abuse and exploitation.

3. The district court did not abuse its discretion in denying Anderson's motion to sever under I.C.R. 14.

I.C.R. 14 allows a court in its discretion to sever counts if a defendant or the State is prejudiced by the joinder of charges. I.C.R. 14. "The inquiry on appeal from the denial of a motion to sever is whether the defendant has presented facts demonstrating that unfair prejudice resulted from a joint trial." *State v. Diaz*, 158 Idaho 629, 634, 349 P.3d 1220, 1225 (Ct. App. 2015) (citing *State v. Eguilior*, 137 Idaho 903, 908, 55 P.3d 896, 901 (Ct. App. 2002); *State v. Cirelli*, 115 Idaho 732, 734, 769 P.2d 609, 611 (Ct. App. 1989)). This Court has identified three potential sources of prejudice that may justify severance of charges under I.C.R. 14:

> (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated; (2) the defendant may be confounded in presenting defenses . . . ; or (3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition.

*State v. Abel*, 104 Idaho 865, 867–68, 664 P.2d 772, 774–75 (1983) (citation omitted).

Anderson argues that he was prejudiced for the second and third identified reasons. The State asserts that Anderson cannot show prejudice because Anderson was able to fully present his defenses at trial and evidence of all the charged offenses could have been admitted at separate trials under I.R.E. 404(b). We address each potential source of prejudice in turn.

a. Anderson's defenses were not confounded.

On appeal, Anderson concedes that his defense counsel below did not explain in detail to the district court how the joint trial could confound his defenses. Yet, he maintains that it was clear to the parties and the district court that his potential defenses to the various charges could be disrupted by a joint trial. The State counters by arguing that Anderson did not brief this issue

below and did not make more than a passing reference to it during the proceedings before the district court. And, the State continues, even if this issue is sufficiently preserved for review, Anderson was able to effectively present his defenses at trial and cannot prove prejudice on that ground. We conclude that Anderson has preserved this issue for appeal, yet he suffered no prejudice because he had the opportunity to present his defenses at trial.

Anderson has identified two defenses to the charges against him. First, with respect to the L.H. charges, he argues that Mother made threats that she would falsely accuse him of molesting L.H. and asked police if someone could get in trouble for coaching a child to make sexual assault allegations. Next, with respect to the publication and possession charges, Anderson argues that other individuals had access to his phone and could have downloaded those files. The trial record shows that Anderson was able to raise and argue both defenses. For instance, Mother testified both that she threatened to falsely accuse Anderson of molesting L.H. and that she asked police if a person could get in trouble for coaching a child to make sexual abuse allegations. Anderson's counsel flagged these statements and made argument about them to the jury during both opening and closing remarks. The jury also heard testimony from Jones and others with access to Anderson's devices. The fact that others had access to Anderson's devices during the relevant time periods in the case was a central theme of Anderson's opening and closing. As such, Anderson has not shown that the joinder of charges against him prejudiced his ability to present his defenses.

> b. *Evidence of the different charged offenses could have been admitted at other trials had the counts been tried separately.*

"In considering whether to grant a motion to sever based on [the possibility that the defendant may be convicted based on criminal disposition], the Court must first determine whether the evidence of the multiple alleged offenses could have been admitted in the different trials had the counts been tried separately." *State v. Williams*, 163 Idaho 285, 293, 411 P.3d 1186, 1194 (Ct. App. 2018) (citing *Abel*, 104 Idaho at 868, 664 P.2d at 775). In that regard, the analysis is the same as if the evidence were sought to be introduced under I.R.E. 404(b). *See Nava*, 166 Idaho at 893–94, 465 P.3d at 1132–33.

Rule 404(b) permits evidence of other crimes, wrongs, or acts for the purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." I.R.E. 404(b)(2). However, such evidence is not admissible to prove a person's propensity to act in accordance with a particular character trait. I.R.E. 404(b)(1). Admission of

evidence under Rule 404(b) proceeds according to a two-tiered analysis. *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009). First, the court must determine that the evidence is relevant for a non-propensity purpose and that there is "sufficient evidence to establish the other crime or wrong as fact." *Id.* Second, the court must conduct a balancing test under Rule 403 and "determine whether the danger of unfair prejudice substantially outweighs the probative value of the evidence." *Id.*

On appeal, Anderson asserts that the district court did not conduct this multi-tiered analysis when ruling on his motion to sever. During oral argument on his motion to sever, Anderson argued that trying the charged offenses together would "risk . . . that the jury will reach a guilty verdict on the basis that the defendant is a bad person." Anderson made the same argument in his briefing on that motion.

In ruling on Anderson's motion, the district court concluded that evidence relating to the possession charges was relevant to the charges relating to L.H. because it corroborated her allegations of abuse. The district court also reasoned that evidence of the L.H. charges, including that Anderson allegedly produced pornographic images of L.H., would be responsive to his argument that multiple parties had access to his devices and could have been responsible for the child pornography.[2] In addition, the district court reasoned that the evidence was highly probative and not improperly prejudicial. In sum, the district court conducted the two-tiered analysis required for the admission of Rule 404(b) evidence by concluding the evidence was relevant for a non-propensity purpose and its probative value was not substantially outweighed by the risk of unfair prejudice.

We conclude that the district court did not abuse its discretion in denying Anderson's motion to sever under I.C.R. 14. The district court recognized the issue was one of discretion, stating, "it would be in error in my discretion to grant the motion." The district court also acted within the boundaries of that discretion, only considering the options available to it under I.C.R. 14. The district court acted consistently with applicable legal standards by conducting the analysis required by *Grist*, reasoning both that the evidence was relevant for a non-propensity purpose and that its probative value was not substantially outweighed by the risk of unfair prejudice. Finally, the district court arrived at its conclusion through the exercise of reason. The

---

[2] While not explicitly stating so, this appears to be a conclusion that the evidence of the possession charges was relevant for the permissible purposes of showing motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *See* I.R.E. 404(b)(2).

district court considered the various charges Anderson sought to sever and concluded that evidence of the L.H. charges would be relevant to rebut Anderson's assertions that he was unaware of the child pornography on his devices (which included images he is alleged to have produced of L.H.) and that evidence of the possession charges would be relevant to corroborate L.H.'s claims of abuse. Accordingly, we affirm the district court's denial of Anderson's motion to sever.

## B. The district court abused its discretion in failing to conduct a Rule 403 balancing test with respect to the Rule 404(b) evidence admitted at trial.

During the proceedings, the district court permitted the State to admit several pieces of evidence under Idaho Rule of Evidence 404(b). Anderson challenges the admission of this evidence against him, asserting that it is merely for propensity purposes and that the district court failed to conduct the proper analysis for admission of Rule 404(b) evidence.

"[T]he admission of I.R.E. 404(b) evidence in a child sex case is subject to the same analysis as the admission of such evidence in any other case." *State v. Grist*, 147 Idaho 49, 51, 205 P.3d 1185, 1187 (2009). As discussed above, evidence of crimes, wrongs, or other acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." I.R.E. 404(b)(1). However, that evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." I.R.E. 404(b)(2).

Admission of evidence under Rule 404(b) is "subject to a two-tiered analysis" as discussed above. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. "The first tier has two steps": (1) "the trial court must determine whether there is sufficient evidence to establish the other crime or wrong as fact"; and (2) "[t]he trial court must determine whether the evidence of the other act would be relevant to a 'material and disputed issue concerning the crime charged, other than propensity'" *State v. Nava*, 166 Idaho 884, 893, 465 P.3d 1123, 1132 (2020) (quoting *Grist*, 147 Idaho at 52, 205 P.3d at 1188). "Such evidence is only relevant if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Grist*, 147 Idaho at 52, 205 P.3d at 1188 (citation omitted). The second tier requires the trial court to engage in a Rule 403 balancing test to assess if the risk of unfair prejudice substantially outweighs the evidence's probative value. *Id.* Failure to conduct a Rule 403 balancing test when necessary may require reversal of a district court's evidentiary rulings. *See State v. Ruiz*, 150 Idaho 469, 471, 248 P.3d 720, 722 (2010).

Below, Anderson challenged the admission of five pieces of Rule 404(b) evidence: (1) the estimated number of uncharged images and videos of suspected child pornography found on Anderson's devices; (2) hand drawn images of female children in sexual positions seized from Anderson at the Ada County jail; (3) information from the Tumblr application on Anderson's phone showing searches for child pornography related terms and a graphic story concerning the sexual abuse of children; (4) information from the SecurePad app on Anderson's phone showing searches for child pornography; and (5) the internet search history on Anderson's phone including searches for child pornography. Except for the internet search history from his phone,[3] Anderson objected to the admission of this evidence orally and in writing under Rule 404(b). The district court ruled prior to trial that the estimated number of uncharged files on Anderson's devices and sexual drawings were admissible. Subsequently, at trial, the district court ruled that the Tumblr data, SecurePad data, and internet search history were also admissible over Anderson's objections. Save for the internet search history, we hold that the district court abused its discretion in admitting all the proposed evidence under Rule 404(b) against Anderson because it never conducted a Rule 403 balancing test.

The district court recognized the issue lay within its discretion, discussing whether it could admit the evidence or not. The district court also acted within the boundaries of that discretion by only considering the admission of the evidence before it. Finally, while we have no doubt the district court reached its conclusions through the exercise of reason, we conclude the district court did not act consistently with applicable legal standards. This Court's holding in *Grist* is clear—the admission of evidence under Rule 404(b) requires a two-tiered analysis. *See Grist*, 147 Idaho at 52, 205 P.3d at 1188. A court must first assess whether the evidence offered is relevant to prove a permissible Rule 404(b) purpose. *Nava*, 166 Idaho at 893, 465 P.3d at 1132. Then, the court must determine whether the evidence's probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." I.R.E. 403; *Nava*, 166 Idaho at 893, 465 P.3d at 1132 (requiring a Rule 403 balancing test prior to the admission of evidence under Rule 404(b)). In this case, the district court merely ruled that each piece of Rule 404(b) evidence was relevant for a permissible purpose but never discussed how the probative value of that evidence compared with its potential to cause unfair prejudice.

---

[3] Anderson objected to this evidence solely on relevance grounds.

The State argues that the district court had previously conducted a balancing test when considering the joinder of charges against Anderson, and that there is no reason to assume that the district court did not implicitly conduct the same analysis here. In essence, the State would have this Court apply an age-old argument that the absence of evidence is not evidence of absence. We cannot endorse this approach, especially when the due process rights of a criminal defendant are at stake. The State's argument begs the question: under these circumstances, what could a criminal defendant do to prove that a district court has not applied the appropriate standard other than showing no such analysis was performed on the record? Accordingly, we must conclude that the district court did not act consistently with applicable legal standards because it failed to conduct a Rule 403 balancing test with respect to any of the Rule 404(b) evidence despite Anderson's objections. As such, we conclude the district court abused its discretion and reverse its evidentiary rulings with respect to the Rule 404(b) evidence. We need not consider whether the district court erred in its analysis with respect to the first tier of the *Grist* test because its lack of Rule 403 balancing is dispositive.

**C. The district court did not err in delivering a jury instruction on deliberation that differed from the standard instruction.**

At the jury instructions conference, Anderson requested that the district court deliver the standard Idaho Criminal Jury Instruction 204 ("I.C.J.I."). The district court considered the request but ultimately chose to deliver a pared-down version of the instruction without the last paragraph because it reasoned that the instruction was repetitive. In full, I.C.J.I. 204 provides:

> I have outlined for you the rules of law applicable to this case and have told you of some of the matters which you may consider in weighing the evidence to determine the facts. In a few minutes counsel will present their closing remarks to you, and then you will retire to the jury room for your deliberations.
>
> The arguments and statements of the attorneys are not evidence. If you remember the facts differently from the way the attorneys have stated them, you should base your decision on what you remember.
>
> The attitude and conduct of jurors at the beginning of your deliberations are important. It is rarely productive at the outset for you to make an emphatic expression of your opinion on the case or to state how you intend to vote. When you do that at the beginning, your sense of pride may be aroused, and you may hesitate to change your position even if shown that it is wrong. Remember that you are not partisans or advocates, but are judges. For you, as for me, there can be no triumph except in the ascertainment and declaration of the truth.
>
> As jurors you have a duty to consult with one another and to deliberate before making your individual decisions. You may fully and fairly discuss among

14

yourselves all of the evidence you have seen and heard in this courtroom about this case, together with the law that relates to this case as contained in these instructions.

During your deliberations, you each have a right to re-examine your own views and change your opinion. You should only do so if you are convinced by fair and honest discussion that your original opinion was incorrect based upon the evidence the jury saw and heard during the trial and the law as given you in these instructions.

Consult with one another. Consider each other's views, and deliberate with the objective of reaching an agreement, if you can do so without disturbing your individual judgment. Each of you must decide this case for yourself; but you should do so only after a discussion and consideration of the case with your fellow jurors.

However, none of you should surrender your honest opinion as to the weight or effect of evidence or as to the innocence or guilt of the defendant because the majority of the jury feels otherwise or for the purpose of returning a unanimous verdict.

I.C.J.I. 204. The district court delivered this instruction to the jury omitting the final paragraph.

A trial court must instruct a jury as to "all matters of law necessary for their information." I.C. § 19-2132(a). "Either party may present to the court any written charge and request that it be given . . . [i]f the court thinks it correct and pertinent, it must be given." *Id.* "A proposed instruction is not 'correct and pertinent' if it is: (1) an erroneous statement of law; (2) adequately covered by other instructions; or (3) 'not supported by the facts of the case'" *State v. Severson*, 147 Idaho 694, 710–11, 215 P.3d 414, 430–31 (2009) (quoting *State v. Olsen*, 103 Idaho 278, 285, 647 P.2d 734, 741 (1982)).

"The I.C.J.I. are presumptively correct . . . [and] [t]rial courts should follow the I.C.J.I. as closely as possible to avoid creating unnecessary grounds for appeal." *McKay v. State*, 148 Idaho 567, 571 n.2, 225 P.3d 700, 704 n.2 (2010) (citation omitted). However, a district court may, deviate from the standard instruction if the modified instruction "more adequately, accurately, or clearly state[s] the law." *State v. Razo-Chavez*, 159 Idaho 590, 592, 364 P.3d 291, 293 (2016). "An error in jury instructions only constitutes reversible error when the instruction misled the jury or prejudiced the party challenging the instruction." *Severson*, 147 Idaho at 710, 215 P.3d at 430.

Anderson's chief complaint with the instruction delivered by the district court is that it failed to instruct the jury that no juror "should surrender [their] honest opinion" because the majority of the jurors feel otherwise. He argues that the instruction, as delivered, is similar to the

dynamite instruction this Court rejected in *State v. Flint*, 114 Idaho 806, 761 P.2d 1158 (1988). That instruction exerted undue pressure on the jurors to reconsider potential minority views in favor of returning a unanimous verdict. *Id.* at 810–13, 761 P.2d at 1162–65.

We conclude that the district court did not err in instructing the jury because the instructions as a whole fairly and adequately stated the law. We disagree with Anderson that the instruction in this case in any way resembles the type of dynamite instruction we prohibited in *Flint*. The instruction the district court delivered informed the jurors that they were to reach their decision "without disturbing your individual judgment." Further, the instruction also informed the jurors that "[e]ach of you must decide this case for yourself; but you should do so only after a discussion and consideration of the case with your fellow jurors." Finally, the jury received another instruction that "[y]our verdict in this case cannot be arrived at by chance, lot, or compromise." And, crucially, the instruction was not delivered to influence an ostensibly deadlocked jury to reach a verdict. While the preferred course would have been for the district court to include all of the language in I.C.J.I. 204, taken as a whole, the instructions did not mislead the jury or prejudice Anderson. As such, we affirm the district court's delivery of the above instruction.

## D. The errors in this case are not harmless.

The State argues that any errors which may have occurred below are harmless because the probative force of the properly admitted evidence is overwhelming compared to the effect of any error. Anderson responds by arguing that even if some of the errors were harmless, the number of errors in this case implicates the doctrine of cumulative error and his judgment of conviction must be vacated.

This Court analyzes harmless error in a criminal proceeding under a burden-shifting approach, "[a] defendant appealing from an objected-to, non-constitutionally-based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt." *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017) (quoting *State v. Perry*, 150 Idaho 209, 222, 245 P.3d 961, 974 (2010)). "[T]he proper showing for 'harmless error' is *not* 'overwhelming evidence' of the defendant's guilt." *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020) (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)). Rather, this Court applies a two-part test, weighing "[t]he probative force of evidence untainted by error

16

against a defendant . . . against the probative force of the error itself." *Id.* at 675, 462 P.3d at 1139 (quoting *Yates v. Evatt*, 500 U.S. 391, 404–05 (1991)).

However, "[u]nder the cumulative errors doctrine, an accumulation of irregularities, each of which might be harmless in itself, may in the aggregate reveal the absence of a fair trial in contravention of the defendant's right to due process." *State v. Samuel*, 165 Idaho 746, 778, 452 P.3d 768, 800 (2019) (quoting State v. Martinez, 125 Idaho 445, 453, 872 P.2d 708, 716 (1994)). The presence of errors alone does not require reversal "since under due process a defendant is entitled to a fair trial, not an error-free trial." *Id.* (quoting *State v. Parker*, 157 Idaho 132, 149, 334 P.3d 806, 823 (2014)). Application of the doctrine of cumulative errors requires a finding of more than one error. *Id.* (quoting *Parker*, 157 Idaho at 149, 334 P.3d at 823).

Having concluded that the district court erred in admitting multiple pieces of evidence under Idaho Rule of Evidence 404(b) without conducting the required Rule 403 analysis, we turn to whether the State has carried its burden to show these errors were harmless beyond a reasonable doubt and if the accumulation of those errors deprived Anderson of his due process rights.

The State's arguments rest on the great weight of the evidence against Anderson. With respect to the charges for sexually abusing L.H., the State notes that L.H. testified that Anderson had sexually abused her and was able to testify as to specific acts of sexual abuse. L.H. disclosed Anderson's abuse to multiple people including Mother, her babysitter, and a nurse practitioner at CARES. The female companion testified that Anderson told her that he sexually abused his "ex's daughter." And L.H.'s mother identified the back massager in her home that matched L.H.'s description of the massager Anderson used to abuse her.

Similarly, the State argues that there is compelling evidence that Anderson produced pornographic images of L.H. At trial, L.H. testified that Anderson had forced her to take her clothes off and took pictures of her body and vagina using his phone. During her CARES interview, she also disclosed that Anderson had taken photos of her. The female companion testified in detail about a pornographic photo of L.H. that Anderson had shown her, and that Anderson claimed to have posed the child in the photo and taken it himself. Law enforcement found pornographic images of L.H. stored on Anderson's phone and hard drive.

Regarding the charges against Anderson for publishing child pornography and possessing child pornography, the State argues that there is also overwhelming evidence. The female

17

companion gave testimony that Anderson showed her child pornography during sex and that she could tell the images were of children based on their physical development and Anderson telling her as much. She also testified that Anderson told her of his interest in child pornography, referencing "littles" and "the younger the better." The images were recovered from Anderson's devices, which both Mother and the female companion testified that he was intensely secretive about. The devices all contained personally identifiable information linking them to Anderson such as a photo of his driver's license, a voicemail left for him, and his user accounts for various apps. In addition, the State introduced a recorded phone call from Ada County jail where Anderson admits to owning all the devices where child pornography was found. In sum, the State contends that the unchallenged evidence against Anderson is so strong as to outweigh the probative force of any error in admitting Rule 404(b) evidence.

We conclude otherwise. While the evidence against Anderson is compelling, we cannot ignore the absence of any Rule 403 balancing with respect to multiple pieces of sexual misconduct evidence. Rule 403 serves the critical function of ensuring that the jury does not see prejudicial evidence without justification. As an appellate body, this Court is not positioned to conduct an independent Rule 403 balancing test where none exists, and thus cannot determine whether the Rule 404(b) evidence admitted at trial was unfairly prejudicial. Given the large volume of Rule 404(b) evidence admitted in this matter, we are unable to conclude that the probative force of the properly admitted evidence outweighs the probative force of the multiple errors in admitting Rule 404(b) evidence. Accordingly, we hold that the accumulation of errors in admitting Rule 404(b) evidence denied Anderson his due process right to a fair trial.

## V.   CONCLUSION

Based on the foregoing, we affirm the district court's denial of Anderson's motion to sever but reverse the district court's evidentiary rulings with respect to admitting Rule 404(b) evidence against Anderson. The errors in admitting this evidence were not harmless, and, as such, we vacate Anderson's judgment of conviction and remand this matter for a new trial consistent with this opinion.

Chief Justice BEVAN, and Justices BRODY, STEGNER, and MOELLER **CONCUR.**

18