# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48726

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, September 2021 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: December 20, 2021** |
| | ) | |
| **COREY STEVEN MCGRATH,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Appellant.** | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Scott Wayman, District Judge.

The judgment of the district court is affirmed.

Ferguson Durham, PLLC, Boise, for appellant Corey Steven McGrath. Craig H. Durham argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho. Kenneth K. Jorgensen argued.

———————————

STEGNER, Justice.

Corey McGrath was charged with two counts of lewd conduct with a minor: one regarding his five-year-old stepdaughter, B.B.; and one regarding his twelve-year-old stepdaughter, L.N. The two counts were severed for trial. During a jury trial on the first count of lewd conduct, and over McGrath's objection, the State introduced evidence of McGrath's cell phone internet search history, which included searches for stepfather-stepdaughter themed pornography, along with two still images of pornographic videos purportedly viewed by McGrath. The jury convicted McGrath of one count of lewd conduct with respect to B.B. McGrath subsequently, pursuant to a plea agreement, pleaded guilty to felony injury to a child regarding L.N.'s accusations in the second count.

The district court sentenced McGrath to life in prison with twenty years fixed for the lewd conduct charge and ten years fixed for the felony injury to a child charge. The sentences were ordered to run concurrently. McGrath appeals his conviction of lewd conduct. He also appeals the sentences imposed for both convictions. The Idaho Court of Appeals affirmed McGrath's

1

conviction and sentences. *State v. McGrath*, No. 47442, 2020 WL 6112526 (Idaho Ct. App. Oct. 16, 2020). McGrath petitioned the Idaho Supreme Court for review, which was granted. We affirm McGrath's conviction and sentences.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are disturbing, but require recitation. On October 19, 2018, five-year-old B.B. was receiving care at Coeur d'Alene Pediatrics for a persistent vaginal rash. B.B.'s mother, E.B., had taken B.B. to her pediatrician, Dr. Shaw, the week prior for the same vaginal rash and received a medicated cream to clear the rash. After the cream failed to produce the expected results, E.B. took B.B. back to Dr. Shaw, who decided to run a culture test. The culture produced a positive result for gonorrhea, a sexually transmitted infection.

After learning of the positive test, Shaw immediately informed the Idaho Department of Health and Welfare (IDHW, or the Department). Caseworker Kayla Ellis and an officer from the Coeur d'Alene Police Department arrived at the clinic shortly thereafter. Shaw testified that she notified the Department because a prepubescent girl testing positive for a sexually transmitted infection is almost always indicative of sexual abuse. Officers interviewed E.B. at the clinic and learned that she and B.B. resided with E.B.'s boyfriend, Corey McGrath, and McGrath's mother and step-father.

Due to the alarming circumstances, the responding officer decided that B.B. should be immediately interviewed at the Child Advocacy Center (CAC) in Coeur d'Alene. The officer decided to conduct the interview herself because the forensic interviewer for the CAC was unavailable. During the interview, B.B. disclosed that an unknown boy from her kindergarten class touched her "pee-pee area." B.B. made no other disclosures that concerned the interviewing officer, so B.B. was sent home with her mother.

Detective Thomas Sudol subsequently took over the case and decided that B.B. should be removed from the home while further information was gathered on household members. Case worker Ellis and an officer removed B.B. from her home on October 25, 2018, after determining that it was "necessary for [her] safety." Also at this time, officers and the Department asked E.B., McGrath, and McGrath's mother and step-father to be tested for gonorrhea. E.B. and McGrath both tested positive.

On October 25, 2018, B.B. was interviewed again, this time by Janet Pace, a forensic interviewer at the CAC. B.B. disclosed that "daddy," referring to McGrath who acted as her step-

father, "cuddled" her in bed on one occasion. After this disclosure, B.B. began to get distracted and asked to take a break. Pace took a break and spoke with Sudol and Ellis, who were watching the interview from the observation room. They informed Pace that they thought B.B. was on the brink of making a disclosure, so Pace returned to the interview room and continued talking with B.B.

B.B. then disclosed to Pace that McGrath, or "daddy," touched her "pee-pee" with his "fingers" more than one time. B.B. also disclosed that McGrath would touch his "pee-pee area" while he was touching her. Due to the positive gonorrhea test and B.B.'s disclosures, McGrath was arrested and charged by criminal complaint with one count of lewd conduct with a minor under the age of sixteen, pursuant to Idaho Code section 18-1508.

Sometime after B.B.'s disclosure of sexual abuse by McGrath, E.B.'s older daughter, L.N., also disclosed instances of sexual abuse by McGrath. L.N., who was twelve years old at the time, disclosed in forensic interviews that McGrath had touched her in "private areas" when she stayed with E.B. every other weekend. Based on L.N.'s disclosures, the State filed an amended complaint, charging McGrath with an additional count of lewd conduct with a minor.

At the preliminary hearing, E.B., B.B., and L.N. testified. The magistrate court found probable cause to bind McGrath over to district court. An Information was filed charging McGrath with two counts of lewd conduct with a minor under sixteen, one related to B.B's allegations, and one related to L.N.'s.

McGrath filed a motion to sever the two counts, arguing that "the joining of the two counts in one trial will subject the defendant to prejudice and an unfair trial." The district court denied the motion. McGrath subsequently filed a motion to reconsider the district court's denial of his motion to sever. Ultimately, the district court agreed with McGrath and ordered the two counts be severed.[1]

The State then filed an Idaho Rule of Evidence 404(b) notice of intent to introduce evidence of McGrath's cell phone internet search history. McGrath filed a motion in limine seeking to exclude "the evidence of pornography allegedly found on the defendant's phone" arguing that such evidence was "not relevant to anything but propensity" and could be unfairly prejudicial. The State opposed McGrath's motion, arguing that because the internet searches were for "father-daughter

---

[1] To reflect the district court's order, Information A (B.B.) and Information B (L.N.) were filed.

sex, father-step[-]daughter sex, [and] teenage sex" they were relevant to prove McGrath's motive and intent, both specific exceptions to Rule 404(b).

In further response, McGrath noted that none of the pornographic images located on his phone were illegal child pornography, and he further argued that motive and intent were not at issue in this case; therefore, the evidence should not be permitted. At a hearing on the motion, the district court denied McGrath's motion in limine, but reserved ruling on the evidence the State sought to admit until trial.

A jury trial for Information A (involving B.B.) began on June 18, 2019. At trial, the State called Sudol, who conducted a "phone dump"[2] of McGrath's cell phone contents. Sudol testified that the extraction technology used when conducting electronic cell phone searches did not produce results for McGrath's internet browsing history, so he "physically went on his phone and went to Google, went to web browsing history and photographed page by page his web browsing history search results." The State then moved to admit Exhibits 12a through 12q, which showed screenshots of McGrath's cell phone internet search history; the search history included various searches for step-daughter and step-father themed pornography. The district court admitted State's Exhibits 12a through 12q over McGrath's objection that they constituted improper propensity evidence.

The State next sought to admit Exhibits 13a and 13b, which were visual images taken from two of the pornographic videos purportedly viewed by McGrath.[3] Sudol described Exhibit 13a as a video of an "Asian child standing in front of [an] adult male . . . giving the adult male oral sex, she took off her clothes." Sudol described Exhibit 13b as "a young white female child that in this video was–was him chasing her around and then raping her." Both exhibits were admitted over McGrath's same objection.

At the close of the State's case, McGrath moved for a mistrial, which the district court denied. After McGrath presented his case, the case was submitted to the jury, which found him guilty.

---

[2] Sudol described a "phone dump" as a process using "forensic software to hook up a phone to a computer, and from that point the software connects to that phone and will extract the data from that phone."

[3] State's Exhibits 13a and 13b depict graphic sexual imagery of what appear to be young girls engaging in sexual acts with adult males. Sudol testified to the purported contents of these videos, although the videos themselves were not admitted at trial.

During a pretrial hearing for L.N.'s trial, the parties reached a plea agreement. McGrath agreed to plead guilty to felony injury to a child in violation of Idaho Code section 18-1501 and misdemeanor sexual battery in violation of Idaho Code section 18-924. As a result, the trial regarding L.N.'s allegations was vacated.

The case proceeded to sentencing. The district court sentenced McGrath to life in prison with twenty years fixed on the lewd conduct charge; ten years fixed on the felony injury to a child charge; and 365 days for the misdemeanor sexual battery charge. All sentences were to run concurrently, and McGrath was given credit for time served. McGrath timely appealed. The Idaho Court of Appeals affirmed the judgment of the district court. *See State v. McGrath*, No. 47442, 2020 WL 6112526, at *1 (Idaho Ct. App. Oct. 16, 2020). McGrath petitioned this Court for review, which was granted.

## II.    STANDARD OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Cook*, 165 Idaho 305, 308, 444 P.3d 877, 880 (2019) (quoting *State v. Schmierer*, 159 Idaho 768, 770, 367 P.3d 163, 165 (2016)).

> This Court reviews questions regarding the admissibility of evidence using a mixed standard of review. First, whether the evidence is relevant is a matter of law that is subject to free review. Second, we review the district court's determination of whether the probative value of the evidence outweighs its prejudicial effect for an abuse of discretion.

*State v. Kralovec*, 161 Idaho 569, 574, 388 P.3d 583, 588 (2017) (quoting *State v. Ehrlick*, 158 Idaho 900, 907, 354 P.3d 462, 469 (2015)). "Sentencing decisions are also reviewed using an abuse of discretion standard." *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020) (quoting *State v. Matthews*, 164 Idaho 605, 607, 434 P.3d 209, 211 (2019)).

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Id.* (italics in original) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## III.    ANALYSIS

5

**A. The district court did not err in admitting evidence of McGrath's cell phone internet search history; however, the district court erred in admitting the still images of pornographic videos purportedly viewed by McGrath.**

During trial, the State sought to admit 17 screenshot images of McGrath's cell phone internet search history, arguing that the evidence was relevant to McGrath's motive and intent.[4] Over McGrath's objection that the images were improper propensity evidence, the district court admitted the images. The State also sought to admit two still images taken from two pornographic videos purportedly viewed by McGrath, once again arguing that the evidence was relevant to his motive and intent. Both images appear to depict young girls engaging in sexual acts. The first image, State's Exhibit 13a, depicts a female (with no visible face showing and whose age is unknown), standing in underwear in front of an adult male. The caption for this video is "Kitty – Ethnic Cheerleader (Part 1)." The second image, State's Exhibit 13b, depicts a female (whose age is also unknown) unwillingly engaging in a sexual act with what appears to be an adult male (only the arm is visible). The caption for this video is "Step Daddy forces his daughter [name deleted] to have sex." Over the same objection by McGrath, the district court admitted the photographs.

On appeal, McGrath argues that evidence of his pornographic search history falls squarely within Rule 404(b)'s prohibition against propensity evidence. Specifically, McGrath argues that motive and intent, the purported purposes for which the State sought admission of the evidence, were not disputed issues at trial. With respect to intent, McGrath argues that while intent is an element of lewd conduct, it is an element in every lewd conduct case. Therefore, allowing evidence of intent in lewd conduct cases would make "prior bad acts [] admissible in all such cases." Instead, McGrath asserts that the issue of intent needs to be "both disputed *and* material." (Italics in original.) With respect to motive, McGrath argues that his pornography preferences "do not tend to provide the reason why he allegedly molested B.B. Instead," McGrath asserts, "it shows that he had a particular taste in pornography that any reasonable juror is going to find abhorrent." As such, McGrath contends that it was impermissible evidence of bad character.[5]

---

[4] Common search terms and websites visited included: "bearly leagal girl f - - - - ed," "young girl f - - - ed," "young teen f - - - ed daddy," "father daughter f - - -," and "DAD AND DAUGHTER PORN," among others.

[5] McGrath also contends that the State should not be allowed to argue that the introduction of the pornography was admissible because it corroborated B.B.'s testimony. McGrath makes this argument by discussing this Court's case law surrounding the admission of 404(b) evidence in child sexual abuse cases. *See, e.g.*, *State v. Grist*, 147 Idaho 49, 53, 205 P.3d 1185, 1189 (2009) (holding that the "Idaho Rules of Evidence require that trial courts treat the admission of evidence of uncharged misconduct in child sex crime cases no differently than the admission of such evidence in other cases."). However, the State does not argue on appeal that the disputed evidence is relevant to corroborate B.B.'s testimony. As a result, this opinion declines to address McGrath's argument in this regard.

Finally, McGrath argues that even if the disputed evidence was relevant, its probative value was greatly outweighed by the danger of unfair prejudice because it "play[ed] into the passions and prejudices of a jury." Specifically, McGrath contends that even if the *search history* were relevant, "there was no need to include the *still images*." (Italics added.) McGrath points out that there was no evidence that the images depicted B.B. or that B.B. had watched these specific videos.

In response, the State argues that the cell phone internet search history and still images of pornographic videos were properly admitted because they were relevant to show McGrath's motive and intent.[6] The State responds to McGrath's argument that the intent element must be disputed before evidence of intent can be properly admitted: Because lewd conduct with a minor is a specific intent crime, relevant 404(b) evidence may always be admitted to prove intent. (Citing *State v. Ehrlick*, 158 Idaho 900, 354 P.3d 462 (2015).) Further, the State argues that "the risk that the jury would convict based on a general distaste for McGrath or his character did not substantially outweigh the probative value of the jury concluding that McGrath had the motive and intent to formulate a sexual relationship with the victim."[7] Thus, the State contends that this evidence was not *unfairly* prejudicial, which would be required in order for the evidence to be excluded.

Idaho Code section 15-1508, lewd conduct with a minor under sixteen, provides:

> Any person who shall commit any lewd or lascivious act or acts upon or with the body or any part or member thereof of a minor child under the age of sixteen (16) years, including but not limited to, genital-genital contact, oral-genital contact, anal-genital contact, oral-anal contact, manual-anal contact, or manual-genital contact, whether between persons of the same or opposite sex, or who shall involve such minor child in any act of bestiality or sado-masochism as defined in section 18-1507, Idaho Code, when any of such acts are done *with the intent of* arousing, appealing to, or gratifying the lust or passions or sexual desires of such person, such minor child, or third party, shall be guilty of a felony and shall be imprisoned in the state prison for a term of not more than life.

I.C. § 18-1508 (italics added).

Idaho Rule of Evidence 404(b) generally prohibits propensity evidence, with several exceptions:

---

[6] The State also argues, for the first time, that "McGrath's motive to have sexual relations with his step-daughter went to show identity—that he was the person who in fact" sexually abused his step-daughter. The State has asserted "identity" as a basis for admission for the first time on appeal. There is no indication from the State's arguments and briefing below that "identity" was a proffered purpose for the admission of the evidence. Therefore, we will not consider it. *See State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019), *reh'g denied* (May 17, 2019).

[7] The State's briefing refers to McGrath's alleged abuse of B.B. as a "sexual relationship." A "relationship" implies mutual consent, which a five-year-old child legally cannot legally give.

(b) Crimes, Wrongs, or Other Acts.

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) Permitted Uses; notice in a criminal case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case, the prosecutor must:

>> (A) file and serve reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

>> (B) do so reasonably in advance of trial--or during trial if the court, for good cause shown, excuses lack of pretrial notice.

I.R.E. 404(b). Rule 404(b) "represents one of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, *except where it tends to prove only criminal disposition.*" *State v. Salinas*, 164 Idaho 42, 44, 423 P.3d 463, 465 (2018) (quoting *State v. Russo*, 157 Idaho 299, 308, 336 P.3d 232, 241 (2014)) (italics added).

> Idaho courts employ a two-step analysis to determine the admissibility of evidence under Rule 404(b). *State v. Russo*, 157 Idaho 299, 308, 336 P.3d 232, 241 (2014) (citing *State v. Pepcorn*, 152 Idaho 678, 688, 273 P.3d 1271, 1281 (2012)). "First, the evidence 'must be sufficiently established as fact and relevant as a matter of law to a material and disputed issue other than the character or criminal propensity of the defendant.'" *Id.* (quoting *Pepcorn*, 152 Idaho at 688, 273 P.3d at 1281). Second, the court must conduct a Rule 403 analysis to ensure that the evidence's probative value is not "substantially outweighed by the danger of unfair prejudice." *Id.*; I.R.E. 403.

*Id.* at 43–44, 423 P.3d at 464–65.

1. McGrath's cell phone search history and the still images from pornographic videos were relevant to prove McGrath's motive.[8]

The State argues that the cell phone internet search history and the images of pornographic videos were relevant to show McGrath's motive to sexually abuse B.B. Whether evidence is relevant is a matter of law that this Court freely reviews. *Kralovec*, 161 Idaho at 574, 388 P.3d at 588. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401.

---

[8] Because we conclude that the disputed evidence was relevant to prove McGrath's motive, we need not address whether it was relevant to prove his intent.

"Motive is generally defined as that which leads or tempts the mind to indulge in a particular act." *State v. Pepcorn*, 152 Idaho at 689, 273 P.3d at 1282 (quoting *State v. Stevens*, 93 Idaho 48, 53, 454 P.2d 945, 950 (1969)).

> "Motive is a well-accepted method of proving the ultimate facts necessary to establish the commission of a crime, without reliance upon an impermissible inference from bad character."[] Evidence of motive is relevant "when the existence of a motive is a circumstance tending to make it more probable that the person in question did the act."

*Russo*, 157 Idaho at 308, 336 P.3d at 241 (citing 9 Am.Jur.2d Evidence § 439 (2008)). "There is no requirement that evidence must show that the motive for committing the crime was personal to the victim." *Id.* (citing *State v. Almaraz*, 154 Idaho 584, 591–92, 301 P.3d 242, 249–50 (2013)).

This Court and the Idaho Court of Appeals have examined the relevance of pornographic evidence in the context of sexual crimes. In *State v. Russo*, the defendant was charged with rape, first degree kidnapping, and burglary. 157 Idaho at 303, 336 P.3d at 236. A search of Russo's computer yielded pornography depicting rape, and over the course of an interview, the defendant revealed that he had fantasies about raping a woman who would decide during the rape that she enjoyed it. *Id.* The district court admitted this evidence, concluding it was relevant to Russo's motive in the crime charged. *Id.* at 307–08, 336 P.3d at 240–41. On appeal, this Court affirmed the decision of the district court, concluding that the evidence was relevant to prove motive and that there "is no requirement that evidence must show that the motive for committing the crime was personal to the victim." *Id.* at 308, 336 P.3d at 241.

In *State v. Rossignol*, the Idaho Court of Appeals held that "at a trial for sexual abuse, incest stories may be admissible as relevant to a defendant's intent and motive to have a sexual relationship with his daughter." 147 Idaho 818, 824, 215 P.3d 538, 544 (Ct. App. 2009). Specifically, the Court of Appeals found that "incest stories" found on the defendant's computer demonstrated his motive for sexually molesting his daughter. *Id.* at 825, 215 P.3d at 545.

Here, while it should be noted that not all the browsing history was related to step-father-step-daughter themed pornography, the search terms that were related to that specific genre reflected McGrath's motive. Thus, we hold that McGrath's search history of step-father and step-daughter pornography was relevant to show McGrath's motive to sexually abuse B.B. Due to McGrath's role as B.B.'s de facto step-father, these specific search terms tend to make McGrath's alleged abuse of B.B. "more . . . probable." I.R.E. 401(a). McGrath's act of searching for pornography involving step-father and step-daughter relationships likely "lead[] or tempt[ed]"

McGrath to "indulge" in the act of sexually molesting B.B. *Pepcorn*, 152 Idaho at 689, 273 P.3d at 1282. Thus, like the incest stories in *Rossignol*, McGrath's step-father and step-daughter themed search history is relevant to show his motive for molesting B.B., his de facto step-daughter.

The still images taken from pornographic videos purportedly viewed by McGrath are also relevant to McGrath's motive for the same reasons as his search history. Both images appear to depict underage girls in nonconsensual sexual settings. The first image, State's Exhibit 13a, depicts a female (with no visible face showing), standing in underwear in front of an adult male. The caption for this video is "Kitty – Ethnic Cheerleader (Part 1)." The second image, State's Exhibit 13b, depicts a girl (whose age is unknown) unwillingly engaging in a sexual act with what appears to be an adult male (only the arm is visible). The caption for this video is "Step Daddy forces his daughter [name deleted] to have sex." These images, while extremely disturbing, are relevant to McGrath's motive for sexually abusing B.B. Because we have concluded that both the search history and images were relevant to prove McGrath's motive, our next inquiry is whether the disputed evidence was more prejudicial than probative.

2. The admission of images of pornographic videos purportedly viewed by McGrath was unfairly prejudicial.

As an initial matter, we address McGrath's reliance on our recent decision, *State v. Anderson*, 168 Idaho 758, 487 P.3d 350 (2021), at oral argument. McGrath argued that *Anderson* should control the outcome here because the district court failed to conduct a Rule 403 balancing analysis prior to admitting the Rule 404(b) evidence. After seeking leave from this Court, the State filed a supplemental brief, arguing that McGrath failed to preserve this argument because he did not assert that the district court erred by failing to conduct a 403 balancing analysis. We agree with the State. McGrath did not argue below that the district court erred in failing to conduct balancing under Rule 403. As such, this argument is waived and we decline to address its merits. *See State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019).

However, we must still determine whether the district court properly admitted the disputed evidence. We conclude that the district court abused its discretion in admitting the two still images from pornographic videos allegedly viewed by McGrath. When conducting a Rule 403 balancing test, we ask whether the probative value of the disputed evidence is "substantially outweighed by a danger of . . . unfair prejudice." I.R.E. 403. "This Court has stated that unfair prejudice requires that 'evidence . . . be excluded if it invites inordinate appeal to lines of reasoning outside of the evidence or emotions which are irrelevant to the decision making process.'" *State v. Chambers*,

10

166 Idaho 837, 844, 465 P.3d 1076, 1083 (2020) (quoting *State v. Rhoades*, 119 Idaho 594, 604, 809 P.2d 455, 465 (1991)). While the disputed evidence is undoubtedly prejudicial, the inquiry for this Court is whether the evidence is *unfairly* prejudicial.

The probative value of McGrath's cell phone internet search history was not substantially outweighed by the danger of unfair prejudice. Although the search terms used by McGrath were sexually explicit in nature, the terms themselves are not unfairly prejudicial. The search history, while it may have provoked emotions from the jury, does not rise to the level of unfair prejudice because the search terms themselves did not inflame the passions of the jury. Admittedly, some members of the jury may have been offended by the search terms used by McGrath; but the offensive nature of words alone are rarely enough to render them unfairly prejudicial in a trial for child sexual abuse.

Nevertheless, the probative value of the two still images was substantially outweighed by the risk of unfair prejudice and should not have been admitted at trial. Despite the State's arguments during trial that McGrath had viewed illegal child pornography, there is no evidence in the record that the videos depicted actual *child* pornography. Importantly, McGrath was never charged with possession of child pornography, nor was evidence introduced that these videos actually depicted children being sexually abused. In fact, Sudol testified during cross-examination that he located these videos on the regular Internet, as opposed to the "dark web," where illegal child pornography is typically located, indicating that the females in the videos could have been over the age of majority, but were acting as children. Such content is not illegal. *See, e.g.*, *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 251 (2002) (stating that "where the speech is neither obscene nor the product of [child] sexual abuse, it does not fall outside the protection of the First Amendment").

The State's argument to the jury that McGrath had viewed illegal child pornography, without evidence that the pornography he purportedly viewed depicted actual children, clearly appealed to the passions of the jury. The State attempted to portray McGrath's pornographic preferences as extremely aberrant, if not illegal, by arguing that the videos depicted children being sexually abused. The fact that McGrath viewed these specific pornographic videos likely had the effect of persuading the jury that he was a man of bad character. Further, the graphic sexual imagery of the still images is unfairly prejudicial in light of the charged conduct. The conduct at issue was McGrath's alleged sexual abuse of B.B, not possession of child pornography, an entirely

different crime under the laws of this State. *See* I.C. § 18-1507. This is not to say, however, that photographic evidence of this nature may *never* be admitted against a defendant; it was simply inappropriate in *this* case. For these reasons, we conclude that State's Exhibits 13a and 13b were unfairly prejudicial pursuant to IRE 403 and should not have been admitted at trial under IRE 404(b).

**B. Given the quantum of overwhelming evidence of guilt, the district court's erroneous admission of the disputed evidence did not contribute to the verdict and was therefore harmless.**

McGrath asserts that, if this Court finds error, the admission of the pornographic evidence was not harmless. McGrath argues that because the State had presented the jury with evidence that B.B. had gonorrhea, the jury would be predisposed to punish him even without evidence of his pornography preferences. McGrath asks this Court to reverse his conviction for lewd conduct with a minor and remand for a new trial. The State responds that even if the pornographic evidence was admitted in error, that error was harmless because the State presented other evidence that was highly probative of McGrath's guilt.

"Harmless error is 'error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). "When the effect of the error is minimal compared to the probative force of the record establishing guilt 'beyond a reasonable doubt' without the error, it can be said that the error did not contribute to the verdict rendered and is therefore harmless." *Id.* The probative force of properly admitted evidence must be weighed against the probative force of the evidence admitted in error. *Id.*

Given the overwhelming quantum of evidence demonstrating McGrath's guilt, we conclude that the admission of the visual images, although improper under Rule 404(b), did not contribute to the verdict. *See id.* The jury heard evidence that both B.B. and McGrath were infected with gonorrhea, as well as live testimony from B.B. herself where she graphically described McGrath's conduct. Specifically, B.B. testified that McGrath lifted B.B. onto his shoulders in the shower and "licked her privates," and that this occurred "a lot." She also testified that McGrath put both his finger and "weener" in her bottom. B.B. also gestured that McGrath would masturbate while touching her. B.B.'s testimony, the positive gonorrhea tests for both B.B. and McGrath, and the internet search history were highly probative of McGrath's guilt. We recognize the severe and graphic nature of the images admitted in error; however, when compared to the probative force of

the properly admitted evidence, the effect that McGrath's admittedly taboo pornographic preferences had was "minimal." *See Garcia*, 166 Idaho at 674, 462 P.3d at 1138. Accordingly, we affirm McGrath's conviction of lewd conduct.

Although we conclude that the evidence admitted in error did not contribute to the verdict in McGrath's case, we nevertheless caution prosecutors against seeking the admission of needlessly inflammatory evidence in order to sustain a conviction. We also caution judges who condone this practice. Prosecutors and judges who countenance the admission of evidence that speaks solely to a defendant's character or inflames the jury run the risk of having to re-try cases in which there is already substantial and probative evidence of a defendant's guilt. In this case, the State presented overwhelming and clearly admissible evidence of McGrath's guilt through the test results showing that McGrath was the likely source of B.B.'s gonorrhea along with B.B.'s powerful testimony of McGrath's lascivious behavior. McGrath's cell phone internet search history bolstered both B.B.'s testimony and the physical evidence. Here, the visual images were prosecutorial overreach and risked a reversal, which would have likely required the young victim to endure yet another trial.

## C. McGrath's sentences are not excessive.

The district court imposed a life sentence with twenty years fixed on the lewd conduct charge, and ten years fixed on the felony injury to a child charge. McGrath appeals his sentences, arguing that the district court abused its discretion because the sentences imposed are "unreasonable and excessive under any view of the facts." McGrath notes that these were his first felony convictions. McGrath concedes that "[s]ome significant period of incarceration was called for," but argues the district court should not have imposed the maximum penalties. Finally, McGrath asserts that because the district court stressed that rehabilitation was not a "viable goal" for McGrath, it "seemed to be punishing [him] for exercising his right to contest the charges, not expressing sufficient remorse, and [] continuing to maintain his innocence."

In response, the State argues that the district court's sentences are supported by the record. The State notes that a sentencing court may properly consider a defendant's refusal to acknowledge guilt when determining rehabilitation potential. (Citing *State v. Kellis*, 148 Idaho 812, 815, 229 P.3d 1174, 1177 (Ct. App. 2010).) The State argues that the district court did not abuse its discretion and properly considered the primary goal of protection of society in sentencing McGrath and, in particular, the lifelong psychological damage to B.B. and L.N.

District courts retain discretion during sentencing:

"[A] fundamental requirement in the proper exercise of sentencing discretion is reasonableness." A sentence is reasonable if it appears necessary to achieve the objectives of criminal punishment. "The objectives of criminal punishment are protection of society, deterrence of the individual and the public, possibility of rehabilitation, and punishment or retribution for wrongdoing, with the primary objective being the protection of society."

. . .

"A sentence is excessive if it is unreasonable under any rational view of the facts." "When a sentence is challenged as being excessively harsh, we independently review the record on appeal, having due regard for the nature of the offense, the character of the offender, and the protection of the public interest." "When considering whether the district court abused its sentencing discretion, we review the entire sentence[.]"

*State v. Dobbs*, 166 Idaho 202, 204–06, 457 P.3d 854, 856–58 (2020) (internal citations omitted).

When a sentence falls within the statutory limits, it is the defendant's burden to show unreasonableness. *Id.* "In deference to the trial judge, this Court will not substitute its view of a reasonable sentence where reasonable minds might differ." *State v. Matthews*, 164 Idaho 605, 608, 434 P.3d 209, 212 (2019) (quoting *State v. Stevens*, 146 Idaho 139, 148–49, 191 P.3d 217, 226–27 (2008)).

At McGrath's sentencing, the district court acknowledged the goals of sentencing, as well as both "positive" and "negative" factors. The district court recognized that McGrath did not have a "significant" criminal history (misdemeanors only), and that he had the support of some family members. Conversely, the district court also noted that lewd conduct is a "very serious offense," and that McGrath's actions would have a "lifelong impact" on B.B. and L.N.

Next, the district court found that rehabilitation was not a "viable goal" in this case; rather, the "protection of society" was paramount: "I'm looking at the protection of society here, and I'm looking at the protection of any other young girls who could ever be in a situation of having to deal with you because you were an opportunist, and you did this over a long period of time." The Idaho Court of Appeals has held that "a court may properly consider a defendant's refusal to acknowledge guilt when evaluating the defendant's rehabilitation potential because acknowledgment of guilt is a critical first step toward rehabilitation." *State v. Kellis*, 148 Idaho 812, 815, 229 P.3d 1174, 1177 (Ct. App. 2010). At the sentencing hearing, McGrath's only remarks to the district court were:

14

I'm sorry for what's been said and done. I'm not an evil person. I just want to be given a chance to show that I'm a good person. I'll do whatever it takes to show that I'm not this person that they painted me to be. That's really all I can say.

The district court did not abuse its discretion in sentencing McGrath to life with twenty years fixed on the lewd conduct charge. First, Idaho Code section 18-1508 permits a life sentence. Thus, it is McGrath's burden to show that this sentence was excessive. Although the district court did not explicitly state that it was considering McGrath's comments as a refusal to acknowledge guilt, both parties argue this point on appeal. Based on the record before us, the district court did not abuse its discretion in determining that rehabilitation was not a realistic goal for McGrath at the time of sentencing. The district court acknowledged that McGrath may, at some point, hold himself accountable for his actions and that rehabilitation could become relevant in the future. Notably, no psycho-sexual evaluation was conducted because of McGrath's continued denial of the allegations and his apparent refusal to submit to a psycho-sexual evaluation. The district court properly considered the primary objective of sentencing, the protection of society, to determine that McGrath should serve a life sentence with 20 years fixed. *See State v. Miller*, 151 Idaho 828, 834, 264 P.3d 935, 941 (2011). In imposing this sentence, the district court only fixed 20 years, which is well within the parameters of section 18-1508.

Likewise, the district court did not abuse its discretion in imposing a ten year fixed sentence on the felony injury to a child charge. Idaho Code section 18-1501 permits the sentencing court to impose a sentence of up to ten years. Once again, it is McGrath's burden to show that this sentence was an abuse of discretion because the district court's sentence was within the statutory limits. The district court properly took into account the severity of the convicted conduct in imposing the maximum sentence allowed under Idaho Code section 18-1501. Therefore, we affirm McGrath's sentences.

## IV.    CONCLUSION

Based on the preceding analysis, the judgment of the district court is affirmed.

Justices BRODY and ZAHN CONCUR.

Chief Justice BEVAN CONCURS in the RESULT.


MOELLER, J., specially concurring.

I fully concur with the analysis and result reached in this case by my esteemed colleagues in the majority. The disturbing evidence outlined in Section III(B) of the majority opinion leaves

15

no doubt in my mind as to either McGrath's guilt or the appropriateness of his twenty years to life sentence. Importantly, the "overwhelming quantum of evidence demonstrating McGrath's guilt" properly admitted at trial convinces me that the errors made during the course of his trial were harmless—but only in the legal sense. I write this special concurrence to highlight my own grave concerns, not only with the manner in which the prosecution jeopardized its otherwise compelling case, but also with the collateral damage potentially caused by unnecessarily exposing all of those participating in the trial to extremely graphic images of abused children unrelated to this case. Simply put, while the errors in this case may have been "harmless" as to the defendant, I believe that the errors still resulted in harm.

The evidence referred to in the majority opinion as Exhibits 13a and 13b were still images taken from pornographic videos the State alleged McGrath had viewed. The title of the videos and descriptions given by the detective were certainly enough to explain the content of the videos as depicting child pornography. While it was error for either image to have been shown to the jury, Exhibit 13b, entitled "Step Daddy forces his daughter [name deleted] to have sex," was especially graphic. I will reluctantly describe it here only to illustrate the basis for my consternation. The photo depicts a prepubescent girl screaming while apparently being raped from behind by an older man. Simply put, it is beyond my comprehension why the trial court would allow the prosecutor to show such a graphic image to the jury under these circumstances. As noted by the majority, this was clearly the type of evidence that Idaho Rules of Evidence 401, 403, and 404(b) were intended to prevent from being admitted at a trial. Additionally, it was completely gratuitous and potentially traumatizing to all—the jury, judge, court personnel, and attorneys—who had to observe it.

Aside from this Court's paramount role in ensuring the fairness of trials and upholding the constitutional rights of all concerned, there are broader societal implications for the use of such evidence that I believe merit a brief discussion. As this case illustrates, sometimes in the heat of battle we can lose perspective and disregard our innate sense of humanity. Therefore, it is important to occasionally be reminded that in the exercise of our duties as judges and attorneys we should not lose touch with the impact of these proceedings on all those affected by our actions. For this reason, as a member of the tribunal constitutionally mandated to "supervise" the conduct of our state's courts, I write separately to highlight three other reasons why such evidence should not have been published to the jury in this case. IDAHO CONST. art. III, § 2.

16

First, unnecessarily publishing an image of child pornography to the jury, one depicting a violent act against a victim unrelated to this case, in a very real way re-victimizes the child depicted in the video. One of the justifications for our laws against child pornography is that such images by their very nature constitute an ongoing crime against the child:

> [T]he term 'child pornography' is used in federal statutes, it is also commonly used by lawmakers, prosecutors, investigators, and the public to describe this form of sexual exploitation of children. However, this term fails to describe the true horror that is faced by countless children every year. The production of child pornography creates a permanent record of a child's sexual abuse. When these images are placed on the Internet and disseminated online, the victimization of the children continues in perpetuity. Experts and victims agree that victims depicted in child pornography often suffer a lifetime of re-victimization by knowing the images of their sexual abuse are on the Internet forever. The children exploited in these images must live with the permanency, longevity, and circulation of such a record of their sexual victimization. This often creates lasting psychological damage to the child, including disruptions in sexual development, self-image, and developing trusting relationships with others in the future.

*Child Pornography*, U.S. DEPARTMENT OF JUSTICE (updated May 28, 2020), https://www.justice.gov/criminal-ceos/child-pornography.

Sexual offenses against children are crimes of the most severe nature, and, as such, evidence produced in these cases should be handled judiciously and sensitively. The admission of evidence that graphically depicts, or even appears to depict, a child being sexually abused should be avoided whenever possible so as not to re-victimize the children who have been sexually abused. Of course, I recognize that there are rare situations where the introduction of such evidence is necessary, such as in child pornography cases brought under Idaho Code section 18-1507(2), where the pornographic nature of the image, the age of the person depicted, or the identity of the child in the image may be directly at issue. However, in most other circumstances, it is generally unnecessary, unwise, and inappropriate to show such images to a jury. Accordingly, the admission of such evidence should, in most cases, be reserved only for those trials in which the evidence is directly relevant to establish an element of the crime.

Second, the admission of this type of evidence can have a lasting impact on all of the participants in a trial, especially the jurors who are required to closely examine it. Of course, almost any case may involve testimony or evidence that could be genuinely traumatic for jurors and others not acquainted with the unpleasant realities of the criminal justice system. Nevertheless, cases such as this one understandably present a significantly higher risk that the jurors and other participants

in the proceedings will hear and see deeply disturbing things during the course of the trial. The result is that jurors summoned to hear such cases, along with the judge, attorneys, and court personnel, may feel the consequences of such evidence echoing in their lives long after the trial has ended.

The impact of such evidence is described as "vicarious trauma" or "secondary trauma," and it is a reality that has lasting impacts on all those who participate in such a trial. It is the result of "secondhand exposure to traumatic situations" involving others. Dawn E. McQuiston, M. Dylan Hooper, & Abbey E. Brasington, *Vicarious Trauma in the Courtroom: Judicial Perceptions of Juror Distress*, 58 ABA: THE JUDGES JOURNAL 32, 32 (Spring 2019). The risk of this type of vicarious trauma for jurors increases based on the nature of the evidence presented at trial:

> Jurors consume a lot of information during the course of a trial: instructions and guidelines from the judge, attorneys' arguments, witnesses' testimony, a variety of exhibits, and more. The information presented in cases involving violent crime or otherwise significant offenses is particularly difficult to consume. Consider information like explicit and gruesome descriptions of the crime scene and injuries (both physical and psychological), shocking visuals (photographs or videos), or emotionally distressing testimony from witnesses. For many, exposure to such graphic and personal information about a serious wrongdoing and its consequences is a novel and overwhelming experience.

*Id*. at 32–33. This is clearly more than just recognizing the truism that some jurors, by virtue of their life experiences, may have more delicate sensitivities than others. Rather, "[a] solid body of research now shows that traumatic stress resulting from exposure to disturbing, gruesome, and/or emotional courtroom testimony and other circumstances related to jury duty can lead to jurors experiencing symptoms associated with psychological trauma and stress-related disorders." *Id*. at 33.

Again, while I acknowledge that there may be some occasions where such evidence must be admitted, judges should still be properly circumspect about whether and how to admit it. Therefore, I wholeheartedly endorse the majority's general admonition concerning the decision to present such needlessly inflammatory evidence in future cases:

> we nevertheless caution prosecutors against seeking the admission of needlessly inflammatory evidence in order to sustain a conviction. We also caution judges who condone this practice. Prosecutors and judges who countenance the admission of evidence that speaks solely to a defendant's character or inflames the jury run the risk of having to re-try cases in which there is already substantial and probative evidence of a defendant's guilt.

I would go just one step further and note that we have seen too many cases like this one, but where the conduct required a remand. *See, e.g., State v. Anderson*, 168 Idaho 758, ___, 487 P.3d 350, 365 (2021) ("While the evidence against Anderson is compelling, we cannot ignore the absence of any Rule 403 balancing with respect to multiple pieces of sexual misconduct evidence. Rule 403 serves the critical function of ensuring that the jury does not see prejudicial evidence without justification."); *State v. Grist*, 147 Idaho 49, 55, 205 P.3d 1185, 1191 (2009) ("We once again caution the trial courts of this state that they must carefully examine evidence [of uncharged sexual misconduct] offered for the purpose of demonstrating the existence of a common scheme or plan in order to the determine whether the requisite relationship exists.").

Third, as can be readily discerned from the majority opinion, the State came perilously close to a remand in this case. This would have likely required the young victims and a new jury to endure the trauma of a second trial. While the natural desire of prosecuting attorneys to secure a conviction by presenting their strongest possible case to the jury is understandable, in cases like this that instinct must be tempered by wisdom—wisdom informed by the Idaho Rules of Evidence. Likewise, trial judges must be diligent to ensure that every defendant, no matter how overwhelming the evidence, is provided the fair trial our Constitution and the Rules of Evidence require. A conviction tainted by a prosecutor overzealously "running up of the score" against a defendant through the admission of irrelevant or unfairly prejudicial evidence runs the very real risk that the case may ultimately end up in a costly and traumatizing remand for a second trial. Ironically, in this case the State was only saved from its poor judgment by the defendant, whose horrific actions left behind an abundant trail of clearly admissible evidence to uphold his conviction and sentence.

We live in a time in which many have become accustomed to the routine and gratuitous scenes of physical and sexual violence depicted in television, movies, and other media. Sadly, those who work in the criminal justice system, especially those in law enforcement, are forced to become acclimated to the aftermath of actual violence as part of their duty to protect and serve the community. However, judges and attorneys should not become so desensitized to acts of sexual violence, especially those involving young children, that we cross the lines of human decency and dignity in seeking justice. The image depicted in Exhibit 13b, probative of nothing, clearly crossed those lines.