**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47813**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: March 2, 2023** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| GUNNAR BJORN ERICSSON, fka | ) **OPINION AND SHALL NOT** |
| ERIC BREWTON SAUSMAN, | ) **BE CITED AS AUTHORITY** |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment of conviction, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Judge

Gunnar Bjorn Ericsson[1] appeals from the judgment of conviction entered against him for one count of sexual abuse of a child, Idaho Code § 18-1506(1)(b), and six counts of sexual exploitation of a child, I.C. § 18-1507(2)(a). Ericsson argues the district court erred in denying his motion to sever and in admitting propensity evidence during trial. Further, Ericsson argues the district court's denial of his motion for mistrial was reversible error. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2010, Ericsson was married and stepfather to his wife's two daughters. K.R., one of the daughters, wanted to become a model so Ericsson offered to help her. Ericsson showed K.R.

---

[1] Gunnar Bjorn Ericsson was formerly known as Eric Brewton Sausman and changed his name on September 22, 2016.

1

pictures of young girls posing in lingerie and suggested K.R. take similar photographs. Ericsson conducted two photo shoots with K.R., the first one with her mother's knowledge and the second without. After the first photo shoot, Ericsson digitally altered some of the photographs to enlarge K.R.'s breasts, make her shirt appear low cut, and make her shorts look shorter. During the second photo shoot, Ericsson instructed K.R. to pull her bikini bottom to the side to expose her genitals and pubic area and then took a photograph of her.

Later, K.R. disclosed to her mother that Ericsson had touched her breasts, removed her underwear, and taken inappropriate photographs of her. Her mother reported the abuse to law enforcement. Law enforcement acquired a search warrant and searched Ericsson's home but did not find the photographs K.R. had described. Ericsson was interviewed by law enforcement, arrested, and charged with sexual abuse of a child and sexual exploitation of a child. During his interview, Ericsson contended K.R. made false allegations as retaliation for Ericsson not allowing her to go to a friend's house.

K.R., her mother, and Ericsson met in a parking lot after Ericsson was released on bail. The State contends this meeting is when Ericsson pressured K.R. to recant her statement. Ericsson denies the allegation. After the parking lot meeting, K.R. went to her school resource officer and said she fabricated the allegations against Ericsson. The case against Ericsson was subsequently dismissed. Ericsson and K.R.'s mother divorced and Ericsson no longer had contact with K.R. or her family.

In October 2017, law enforcement received two cyber tips for child pornography associated with Ericsson's Google accounts. Detectives executed search warrants and Detective Brady--who was involved in the 2010 investigation of the allegations involving K.R.--reviewed the evidence collected pursuant to the warrant. Detective Brady recognized photographs of K.R. from 2010. The photographs were under the alias "Nicole" and inside folders named "Nicole Lee." There were also photographs of K.R.'s mother, renamed "Angela Lee," and photographs of Ericsson, renamed "Derek Lee." There were also documents associated with the fictitious Lee family, such as permission slips, medical waivers, fake bills, modeling contracts, residential information, Craigslist ads, and other personal identifying information. The documents primarily centered on Nicole's modeling career.

Ericsson's accounts also contained "guides" on how to manipulate children, how to remove someone's inhibitions, how to turn your daughter into a "slut," and fabricated conversations

2

between Nicole and others. In one such conversation, Nicole and her friend discuss Nicole posting pictures online. In another fabricated conversation, Nicole's father, Derek, encourages her to pose topless for photographs to become a successful model.

Included in Ericsson's accounts were numerous stories about adults sexually abusing children. One of these stories was called "Trick Photography." The story was about a girl named C. (the nickname that K.R. went by) whose father took her to a photo shoot where she was manipulated to take her clothes off for nude pictures and, afterwards, was sexually assaulted by the photographer.

Detective Brady found email requests to Ericsson seeking pictures of Nicole in exchange for similar pictures of other children. Detective Brady also found five graphic child pornography videos. Three of the videos were saved under the name Nicole. The two other videos were saved in the "naughty" folder together with videos renamed Nicole.

Ericsson's Google email was associated with a Twitter account. After executing a search warrant for the Twitter account, Detective Brady found Ericsson had sexually suggestive conversations about Nicole on Twitter with other users. Ericsson also publicly encouraged others to remotely access his laptop by providing login information for a remote access program that was installed on his laptop. Detective Brady used the login and was able to access Ericsson's laptop remotely. He discovered that the previously mentioned child pornography videos and photographs of K.R. were also stored on Ericsson's laptop.

A search warrant was executed on Ericsson's residence. Detectives seized a desktop computer tower, several hard drives, and a laptop. The laptop had two programs installed to allow remote access to others, and one of the programs was running when the laptop was seized.

A forensic examination of Ericsson's devices revealed tens of thousands of files related to K.R., including hundreds of photographs of her. Many photographs were digitally altered to create pornography. Investigators found software used to modify metadata and Photoshop software with evidence of photograph editing activity and modified metadata. In addition, investigators discovered Internet search history for terms such as "jailbait," "asstr,"[2] "young boobs," "young perky," "jailbait hot pants," "teen girls selfie swimsuit," and "pimp daughter." Ericsson had visited

---

[2]     "ASSTR" is an acronym that stands for adult sex stories text repository.

and bookmarked websites and forums that host child pornography; investigators found photographs of K.R. on one of these websites.

In a single indictment, the State charged Ericsson with sexual abuse of a child for touching and/or rubbing K.R.'s breasts (Count I), sexual abuse of a child for removing K.R.'s underwear (Count II), sexual abuse of a child for photographing K.R. in a bikini with her genitals exposed (Count III), sexual abuse of a child for photographing K.R. in a bikini with her buttocks and genitals exposed (Count IV), sexual abuse of a child for photographing K.R. in a bikini with her buttocks exposed (Count V), sexual abuse of a child for photographing K.R. in a miniskirt with her genitals visible (Count VI), sexual exploitation of a child for possessing the photograph charged in Count III (Count VII), sexual exploitation of a child for possessing the photograph charged in Count VI (Count VIII), and five counts of sexual exploitation of a child for possessing the five child pornography videos that were either saved as Nicole or were in the same folder as those renamed Nicole (Counts IX-XIII).

Ericsson filed a motion to sever and argued for four separate trials; Count I-II, Counts III-VI, Counts VII-VIII, and Counts IX-XIII. Ericsson asserted that the charges were not part of a common scheme or plan and that trying the charges together would prejudice him. Meanwhile, the State filed a motion to introduce evidence pursuant to Idaho Rule of Evidence 404(b). The State sought to introduce evidence of and discuss the fictitious family, uncharged files of child pornography, Internet search terms and bookmarks, and Photoshopped images of K.R., among other associated evidence. The State argued the evidence was admissible to show knowledge, intent, motive, identity, and absence of mistake.

At the pretrial hearing, the State dismissed Counts III-VII and Count XIII. The parties and the district court conflated their discussion of both the motion to sever and the I.R.E. 404(b) motion. The district court ruled the State could not discuss age difficult pornography[3] and denied the motion to sever. Ericsson's trial counsel then asked the district court to clarify its order on the State's I.R.E. 404(b) motion.

COURT:     I'm allowing internet searches that reflect a strong interest in child pornography. And as to the rest--

---

[3]     The prosecutor described the term "age difficult pornography" as pornography that detectives and forensic specialists believe is child pornography but cannot say with certainty. This typically involves older teens who, despite being minors, are physically mature.

4

DEFENSE: And I guess specifically, I don't--[the prosecutor] did not list on here the rape fantasy story. . . . And so my concern would be, how many of these things are actually going to be discussed.

The district court never detailed its ruling on the State's I.R.E. 404(b) motion after being interrupted.

A trial was held for the remaining eight charges: sexual abuse of a child for touching and/or rubbing K.R.'s breasts (Count I), sexual abuse of a child for removing K.R.'s underwear (Count II), sexual exploitation of a child for possessing the photograph of K.R. in a bikini with her genitals exposed (Count III), and five counts of sexual exploitation of a child for possessing five videos of child pornography (Counts IV-VIII). During the trial, Ericsson moved for a mistrial after the prosecutor allegedly elicited additional details from Detective Brady about the Trick Photography story. Ericsson argued the prosecutor exceeded the scope of the district court's pretrial ruling. The district court found the prosecutor had not gone beyond the scope of the pretrial ruling and denied the motion for mistrial.

The jury acquitted Ericsson on Count II, sexual abuse of a child, but found him guilty on the remaining counts. Ericsson timely appealed.

## II.

## ANALYSIS

Ericsson asserts multiple errors on appeal. First, Ericsson contends the district court abused its discretion in denying his motion to sever because the joinder was prejudicial. Second, Ericsson asserts the district court abused its discretion when it admitted propensity evidence. Third, Ericsson argues the district court erred by denying his motion for mistrial after the prosecutor introduced error related to the Trick Photography story. Lastly, Ericsson contends that even if the above errors are individually harmless, they amount to cumulative error.

### A. Motion to Sever

Ericsson contends the district court erred in denying his motion to sever under Idaho Criminal Rule 14 because the joinder was prejudicial.[4]

---

[4] In his opening brief, Ericsson asserted that joinder was improper under Idaho Criminal Rule 8. In his reply brief, Ericsson withdrew his argument regarding joinder, agreeing with the State's contention that he did not challenge the "connected together" provision of I.C.R. 8, instead only arguing that joinder would not be proper based on the alternative "common scheme or plan" provision of the rule. Ericsson did not, however, "withdraw that portion of the argument that

5

This Court reviews a district court's denial of a motion to sever pursuant to I.C.R. 14 for an abuse of discretion. *State v. Nava*, 166 Idaho 884, 890, 465 P.3d 1123, 1129 (2020). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Idaho Criminal Rule 14 provides:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in a complaint, indictment or information, the court may order the state to elect between counts, grant separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires.

When considering a motion to sever pursuant to I.C.R. 14, trial courts have considered three potential sources of prejudice in analyzing whether the joinder is prejudicial:

> (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated; (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other; or (3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition.

*Nava*, 166 Idaho at 893, 465 P.3d at 1132. The inquiry on appeal from the denial of a motion to sever is whether the defendant has presented facts demonstrating that unfair prejudice resulted from a joint trial. *State v. Diaz*, 158 Idaho 629, 634, 349 P.3d 1220, 1225 (Ct. App. 2015).

Ericsson argues the third potential source of prejudice. Specifically, Ericsson contends joinder "was prejudicial because evidence of each category of counts was mere propensity evidence and would not have been admissible in separate trials." In considering whether to grant a motion to sever based on the possibility that the defendant may be convicted based on criminal disposition, we must first determine whether the evidence of the multiple alleged offenses could have been admitted in the different trials had the offenses been tried separately. *See State v. Anderson*, 168 Idaho 758, 768, 487 P.3d 350, 360 (2021). Accordingly, we analyze the admissibility of the evidence under I.R.E. 404(b). *Anderson*, 168 Idaho at 768, 487 P.3d at 360.

---

establishes that the three categories of charges do not constitute a common scheme or plan" for purposes of severance or Idaho Rule of Evidence 404(b).

Idaho Rule of Evidence 404(b)(2) permits evidence of other crimes, wrongs, or acts for the purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." However, such evidence is not admissible to prove a person's propensity to act in accordance with a particular character trait. I.R.E. 404(b)(1). The admissibility of such evidence under I.R.E. 404(b) is evaluated according to a two-tiered analysis. *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009). First, the trial court must determine whether the evidence is relevant for a non-propensity purpose and that there is sufficient evidence to establish the other crime or wrong as fact. *Id.* Second, the trial court must conduct a balancing test under I.R.E. 403 and determine whether the danger of unfair prejudice substantially outweighs the probative value of the evidence. *Id.*

Ericsson argues the district court abused its discretion by failing to act consistently with the foregoing legal standards. Specifically, Ericsson contends the "three categories of charges do not share significant common characteristics that are so related to the other counts that the charges constitute a common scheme or plan."[5] "Thus," Ericsson concludes, "the evidence would not have been relevant for the non-propensity purpose of common scheme or plan" in separate trials. Ericsson further contends the district court erred by analyzing admissibility based on evidence of intent rather than focusing on "the non-propensity purpose of common scheme or plan." The State responds that the district court did not err because, even if the three categories of charges were tried separately, all evidence could have been admitted in each trial based upon common scheme or plan and as evidence of intent.

During the pretrial hearing, the district court initially indicated an inclination to sever the charges that dealt directly with K.R. from the charges of possession of child pornography videos that did not include K.R. The State confirmed none of the charged child pornography had K.R. in the actual footage; however, Ericsson renamed the files and put them in folders to make them appear that they were Nicole Lee, the alias Ericsson created for K.R. The State explained:

> What [Ericsson] did is he created a whole new fictitious family. He created cell phone bills, contracts, all sorts of things, where he was Derek C. Lee. His ex-wife was Angela, and then [K.R.] is Nicole. And so most of these fake documents

---

[5] Ericsson describes the "three categories of charges" as: (1) "sexual abuse counts involving the alleged touching of K.R. in 2010"; (2) a sexual exploitation of a child count involving the alleged possession of an [sic] sexualized photograph of K.R. in 2017 and 2018"; and (3) "sexual exploitation of a child counts involving the alleged possession of child pornography videos in 2017 and 2018."

revolved around her being a 14-year-old model, fake modeling contracts, just the exact same stuff that he was doing back in 2010 [when he was abusing K.R.]

He renamed some of the pornography videos that we have [included as] charge[s] Nicole or Nicole filming her BFF, so he's associated with those downloaded child pornography, the last five counts, with [K.R.] through this fictitious family. He's trying to convince people that [K.R.] is her.

They're also found in file structures where . . . it's Nicole Lee Artistic Photos. We find child pornography in there with pictures of [K.R.]

And so, Your Honor, he has associated the child pornography specifically with [K.R.,] the victim in this case. And then he used [K.R.'s] pictures to lure other[s] in to give him additional child pornography.

In addition to describing the common scheme or plan linking the counts directly involving K.R. and the counts alleging sexual exploitation of a child based on Ericsson's possession of five child pornography videos, the State also argued that the child pornography videos were relevant to Ericsson's intent. Evidence of intent was particularly important in light of Ericsson's claim, and expected defense, that others placed the videos on his computer via remote access Ericsson provided to them. The following exchange between the district court and the prosecutor illustrates this point:

COURT: Well, he's going to argue he didn't put them there.
PROSECUTOR: Yes. If he's arguing that people would remote in and left it there and it's not his, all of this goes to show that he absolutely had the intent to possess this.
COURT: I see. So it fits in more seamlessly into the case as a whole.
PROSECUTOR: Yes.
COURT: And it is highly relevant to the case as a whole. All right. Well, so that certainly seems to be a strong argument for not severing it because then logically it's relevant and material to the issues in this case. And it does sound to me like it would be highly probative, and based on that argument, now that I can see a counter argument which I think is fine.
I think the counter argument is legitimate and fine to be made in this case, but it does--but now that I understand your argument, I don't think that that creates a strong case for severing it because it seems to me it actually goes the opposite way. It shows the necessity of those counts being present in this case.
So I'm going to deny the motion to sever.

On appeal, Ericsson argues that, pursuant to *State v. Orellana-Castro*, 158 Idaho 757, 760, 351 P.3d 1215, 1218 (2015), the "pertinent consideration is common scheme or plan, not intent." We disagree. Contrary to Ericsson's argument, *Orellana-Castro* did not hold that the existence of a common scheme or plan is necessary to preclude severance. Rather, the Court noted that the

basis for an I.C.R. 14 motion for severance is "often that evidence of the defendant's conduct which would be admissible in the prosecution of one offense would not be admissible under Evidence Rule 404(b) in the prosecution of the other offense if it were tried separately." *Orellana-Castro*, 158 Idaho at 760, 351 P.3d at 1218. By its plain language, the admissibility of evidence under I.R.E. 404(b) is not limited to a common scheme or plan theory. *See* I.R.E. 404(b) (providing evidence of other crimes, wrongs, or acts is not admissible to prove character but may be admissible for non-propensity purposes such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident).[6] Only when a common scheme or plan theory is the basis for both joinder under I.C.R. 8 and the basis for severance due to prejudicial joinder under I.C.R. 14 is the analysis "the same." *See Orellana-Castro*, 158 Idaho at 760, 351 P.3d at 1218. This principle does not, on its face, or as explained in *Orellana-Castro*, mean that charges must be severed absent proof of a common scheme or plan. If that were true, the rule would state as much. It does not. Nor have Idaho's appellate courts applied such a limited view of severance under I.R.E. 14. *See, e.g.*, *Anderson*, 168 Idaho at 768, 487 P.3d at 360 (evaluating whether defendant was confounded in defenses or whether I.R.E. 404(b) analysis of admissibility to show defendant's knowledge of child pornography on his devices and to corroborate victim's abuse allegations in affirming denial of I.R.E. 14 motion to sever). Idaho Rule of Evidence 404(b) provides a non-exhaustive list of non-propensity purposes, which includes intent. Therefore, in deciding whether to sever the charges, it was appropriate for the district court to consider whether all the evidence would be admissible in separate trials to show either Ericsson's intent or a common scheme or plan pursuant to I.R.E. 404(b).

---

[6]  The words "common scheme" do not appear in I.R.E. 404(b). Indeed, the use of that phrase predates the adoption of the Idaho Rules of Evidence. Nonetheless, even after the adoption of the Idaho Rules of Evidence, the phrase continues to be used as legal shorthand. In recent cases, the Idaho Supreme Court said that "preparation, plan, knowledge, [and] identity . . . are most frequently grouped together under the rubric of 'common scheme or plan.'" In another case, "knowledge, identity, or absence of mistake or accident" were grouped under the general category of "common scheme or plan." We think it important, however, to recognize that evidence may be relevant for specific purposes listed under I.R.E. 404(b) (and possibly for other appropriate purposes not listed in Rule 404(b)) even though the prior conduct is not linked to the charged conduct by a common plan or scheme.

*State v. Marks*, 156 Idaho 559, 565 n.2, 328 P.3d 539, 545 n.2 (Ct. App. 2014) (citations omitted).

Ericsson contends the district court erred with respect to its common scheme or plan analysis because, he claims: (1) the court did not "carefully examine the evidence offered for the purpose of demonstrating the existence of a common scheme or plan to determine whether the requisite relationship existed"; (2) the district court did not identify the common scheme or plan; and (3) there was no common scheme or plan. Ericsson's first two arguments appear to be based solely on a few lines from the transcript of the hearing in which the district court noted that the child pornography video evidence was "highly relevant to the case as a whole," leading to a "strong argument for not severing it" due to its "logical" relevance and materiality to the case and its high probative value. In doing so, Ericsson ignores the context and the remainder of the hearing in which the district court considered the argument on the common scheme and plan and summarized its understanding of what that was. In light of the transcript as a whole, we reject Ericsson's argument that the district court did not "carefully examine the evidence" or identify the common scheme or plan between and among the charged offenses.

As to the existence of a common scheme or plan, Ericsson argues one did not exist because there was no evidence to show that, at the time Ericsson touched K.R. in 2010, "he had a plan to also possess the sexualized photograph of K.R. in 2017 and 2018" or a "plan to also possess the videos of child pornography in 2017 and 2018." Ericsson also argues that the touching offenses occurred at different times, under different circumstances, and involved different kinds of abusive conduct than the sexual exploitation by possession offenses. In support of these arguments, Ericsson attempts to align this case with *State v. Field*, 144 Idaho 559, 165 P.3d 273 (2007).

In *Field*, the defendant was charged with inappropriately touching a seven-year-old girl and a separate incident involving inappropriately touching a seventeen-year-old girl. The Court concluded joinder was improper because they were not connected together and did not involve a common scheme or plan. As to the latter, the Court held that the two incidents did not involve a common scheme or plan because there was no evidence that the defendant had a plan to commit the second offense two years after he committed the first offense, the type of sexual contact was different between the two incidents, and the similarities between the two incidents[7] were insufficient to otherwise show a common scheme or plan. *Id.* at 566-67, 165 P.3d at 280-81.

---

[7] The similarities noted in *Field* included that the "girls were only temporarily in the household, that the acts occurred in Field's home, and that the abuse began with 'innocent' touching." *State v. Field*, 144 Idaho 559, 566, 165 P.3d 273, 280 (2007).

10

Conversely, the evidence in this case seamlessly connects the conduct underlying all of the charged offenses. The evidence detailed above regarding Ericsson's creation of a fictitious family was based on K.R. and included the pictures Ericsson took of K.R. in 2010.

As noted, Ericsson's sexual abuse of K.R. in 2010 was in conjunction with his photographing her. Ericsson manipulated the photographs of K.R., stored them, and shared them, which was discovered pursuant to a warrant in 2017. Ericsson necessarily possessed the images of K.R. from the time he took them until the time of discovery. To suggest, as Ericsson's argument does, that he did not intend to possess the photographs after he took them, or that additional evidence indicating that he intended to possess the photographs until they were discovered in order to show a common scheme or plan is without merit. Ericsson's creation of sexually exploitative material relating to K.R. in 2010 was part and parcel to his common scheme or plan to possess and share child pornography in 2017 and 2018, as evidenced by his use of K.R.'s photographs and his collection of videos depicting child pornography located within files labeled Nicole Lee, the alias Ericsson created for K.R.

Considered together, the evidence about Ericsson sexually abusing K.R. is relevant for purposes of the child pornography charges because it explains why the "Nicole" label is important. Ericsson created a fictitious family centered on the sexualization of Nicole, his alias for K.R. Ericsson took and altered photos of K.R. to make them appear more sexual in nature. He created accounts associated with his fictitious persona; facilitated remote access to tens of thousands of documents related to the fictitious family; employed these measures to obtain additional child pornography; and associated the additional child pornography with the alias he created for K.R. This evidence makes it more probable that Ericsson intentionally obtained and possessed the child pornography on his laptop because he labeled the files "Nicole," his alias for K.R.

The Idaho Supreme Court's opinion in *Anderson* is instructive. In *Anderson*, the Court held that the defendant's sexual abuse of the victim was integral to his plan to possess child pornography as evidenced by the fact "that [he] took sexualized photos of [the victim], which he stored on his devices near other suspected images of child pornography." *Anderson*, 168 Idaho at 767, 487 P.3d at 359. Further, the Court held that the charge alleging publication of child pornography "was part of a common scheme to abuse L.H. and possess images of her for his own sexual gratification," noting that Anderson had shown his female companion pornographic images he had taken of the victim. *Id*.

11

Ericsson acknowledges this case is similar to *Anderson* in that he "stored sexualized photographs of K.R. in the same Google Drive where other suspected child pornography was found, and the Google Drive was accessible to others via remote," but asserts "there are also differences." Those differences include that Ericsson did not show K.R. "images of child pornography" and the offenses in *Anderson* occurred within the same year whereas there were "seven or eight years between the alleged touching and the other offenses here." That there was no allegation that Ericsson showed K.R. child pornography does not defeat the common scheme or plan previously described, nor does the differing timeframes. The evidence shows that Ericsson had a plan to possess child pornography from the time he abused K.R. and took photographs of her in 2010 until he was arrested in 2018 after law enforcement discovered both the photographs of K.R., the pornographic material based on K.R., and other child pornography in Ericsson's possession.

Ericsson also argues that, even if intent is a proper consideration on the question of severance, which we have concluded it is, "the evidence was not relevant to intent for similar reasons that it was not relevant to common scheme or plan." We disagree. Ericsson's argument regarding intent fails for the same reasons as his argument regarding common scheme or plan, as set forth above. The district court did not abuse its discretion, and we affirm the district court's denial of Ericsson's motion to sever.

## B.      I.R.E. 404(b) Evidence

Ericsson challenges the admission of certain I.R.E. 404(b) evidence, including evidence of the fictitious family Ericsson created, uncharged Photoshopped images of K.R., Internet searches and bookmarks pertaining to child pornography, and uncharged child pornography. Ericsson argues the district court erred because it failed to identify a non-propensity purpose to which the evidence was relevant, failed to determine whether the probative value substantially outweighed the unfair prejudice from the evidence as required by I.R.E. 403, and, in the alternative, erred because the evidence was inadmissible. The State first responds that Ericsson's arguments are not preserved and further argues all the evidence was admissible pursuant to I.R.E. 404(b).

The evidence rule in question, I.R.E. 404(b), provides:

> (1)      Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2)      Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent,

12

preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case, the prosecutor must:

> (A) file and serve reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
> (B) do so reasonably in advance of trial--or during trial if the court, for good cause shown, excuses lack of pretrial notice.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *Grist*, 147 Idaho at 54, 205 P.3d at 1190. Of course, evidence of another crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule. *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence to which an I.R.E. 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could believe the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190. In this case, Ericsson does not challenge the existence of the evidence as an established fact. Therefore, we address only the relevance and unfair prejudice issues. We exercise free review of the trial court's relevance determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

### 1. Preservation

To start, Ericsson argues that, pursuant to *Anderson*, 168 Idaho 758, 487 P.3d 350, the district court abused its discretion by either not conducting an I.R.E. 403 balancing test or not identifying a non-propensity purpose for the challenged evidence under I.R.E. 404(b). In *Anderson*, the Court stated that "[f]ailure to conduct a 403 balancing test when necessary may require reversal of a district court's evidentiary rulings." *Anderson*, 168 Idaho at 770, 487 P.3d at

13

362. The State argues that neither of Ericsson's I.R.E. 404(b) procedural arguments were preserved below as required by *State v. McGrath*, 169 Idaho 656, 501 P.3d 346 (2021).

In *McGrath*, the appellant challenged the admittance of I.R.E. 404(b) evidence and, during oral argument, argued that *Anderson* was dispositive. *McGrath*, 169 Idaho at 665, 501 P.3d at 355. The Idaho Supreme Court held that McGrath failed to preserve his *Anderson* argument because, "McGrath did not argue below that the district court erred in failing to conduct balancing under [I.R.E.] 403"; as such, the Court held the argument was waived and declined to address its merits. *McGrath*, 169 Idaho at 664, 501 P.3d at 354. Ericsson suggests the Court held McGrath failed to preserve the issue because he raised the issue during his appellate oral argument rather than in his opening appellate brief, as Ericsson did. We agree with the State's interpretation of *McGrath*. The Idaho Supreme Court does note McGrath raised the issue at oral argument, but the Court held McGrath did not argue the issue "below," an unmistakable reference to the trial court. Furthermore, in support of its conclusion that McGrath failed to preserve the issue, the Court cites to *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019), which discusses the requirement to raise both the issue and the party's position on the issue to the trial court before it is properly preserved. In this case, Ericsson did not argue to the district court that it failed to identify a non-propensity purpose[8] or conduct an I.R.E. 403 balancing test; as a result, his procedural challenge is not preserved. Nevertheless, pursuant to *McGrath*, we will still determine whether the evidence was properly admitted. *McGrath*, 169 Idaho at 665, 501 P.3d at 355.

### 2. Fictitious family

Ericsson argues the evidence of the fictitious family was not relevant for a non-propensity purpose. Specifically, Ericsson argues the evidence did not prove intent or motive because the creation of fake documents does not indicate an intent or motive to sexually abuse a child (in the past) or to possess child pornography. Ericsson further contends the evidence does not prove knowledge of possessing child pornography or identity for the alleged sexual abuse and possession of child pornography charges. Ericsson argues the evidence's purpose is solely to prove bad character and merely labeling the evidence for a non-propensity purpose does not make it so.

---

[8]    Neither *Anderson* nor *McGrath* dealt with a failure to identify a non-propensity purpose on the record under I.R.E. 404(b); however, the same logic that the Idaho Supreme Court applied to the I.R.E. 403 balancing test (the second *Grist* analysis step) would be equally applied to the non-propensity purpose analysis (first *Grist* analysis step).

At a minimum, the fictitious family evidence was relevant to show intent. As previously discussed in Section A, above, the fictitious family showed the common scheme or plan connecting the 2010 offenses to the 2017-2018 offenses.[9] Ericsson's fictitious family, which he admitted creating, fixates on and sexualizes K.R. through her alias, Nicole. For example, the Craigslist ad seeks a photographer for Nicole. Relatedly, modeling was K.R.'s aspiration when she was a child. Ericsson also fabricated a conversation between Nicole and her friend about posting suggestive pictures online, and another conversation between Nicole and her father, Derek (Ericsson's alias), where Derek encourages Nicole to take her top off during a photo shoot. This evidence demonstrates parallels between K.R.'s allegations in 2010 and "Nicole's" experiences.

In addition to being a key component of the common scheme or plan, evidence of the fictitious family has a tendency to make it more probable that Ericsson had the intent (and motive) of sexual gratification when he sexually abused K.R. In addition, it has a tendency to make it more probable that Ericsson knowingly possessed child pornography because it was labeled "Nicole," furthering his scheme to sexualize "Nicole," i.e., K.R. Thus, evidence of the fictitious family was relevant to prove Ericsson's common scheme and plan and his intent.

Ericsson argues that, even if the fictitious family evidence is relevant for a non-propensity purpose, the danger of unfair prejudice substantially outweighs the probative value under I.R.E. 403. Ericsson contends that the emphasis placed on the fictitious family likely induced the jury to believe Ericsson was more likely to have committed the charged offenses due to sexual deviancy. Ericsson also argues there was no barrier to protect against the jury improperly using this evidence because the district court did not give a limiting instruction.[10]

As noted by the State, "[e]vidence is not unfairly prejudicial simply because it is damaging to a defendant's case." *State v. Pokorney*, 149 Idaho 459, 465, 235 P.3d 409, 415 (Ct. App. 2010). Rather, evidence is unfairly prejudicial when it tends to suggest decision on an improper basis. *State v. Floyd*, 125 Idaho 651, 654, 873 P.2d 905, 908 (Ct. App. 1994).

---

[9] In fact, the fictitious family is so entrenched in the overall scheme and criminal conduct that this Court is not convinced the evidence qualifies as Idaho Rule of Evidence 404(b). Idaho Rule of Evidence 404(b) does not extend to evidence of acts which are intrinsic to the charged offense. *State v. Pullin*, 152 Idaho 82, 87, 266 P.3d 1187, 1192 (Ct. App. 2011) (quoting *State v. Sheldon*, 145 Idaho 225, 228, 178 P.3d 28, 31 (2008)). Nonetheless, the State did not raise this argument to the district court, so we analyze the evidence under I.R.E. 404(b).

[10] It does not appear that Ericsson requested a limiting instruction from the district court.

15

The prejudicial nature of the fictitious family evidence does not substantially outweigh the probative value. The fictitious family is highly probative because it is the overarching connection to demonstrate Ericsson's common scheme and plan and his intent to sexualize and abuse K.R. Here, none of the evidence is so prejudicial to inflame the jury to reach a verdict on an improper basis. Although suggestive of sexual deviancy, the evidence is not so offensive to substantially outweigh its high probative value. Thus, the district court did not abuse its discretion because the fictitious family evidence was admissible under I.R.E. 404(b).

### 3. Uncharged Photoshopped images of K.R.

Ericsson argues the district court abused its discretion because the Photoshopped images of K.R. were solely propensity evidence. During the pretrial hearing, Ericsson's trial counsel argued the images were not relevant because they were of K.R.'s face Photoshopped on bodies of nude adults, as opposed to manipulating them to look childlike. As noted by the district court, the Photoshopped images of K.R. showed sexualization of K.R., which was relevant to intent.

We conclude that the district court correctly held the evidence relevant for purposes of intent. The Photoshopped images reveal Ericsson's sexualization of and fixation on K.R., which makes it more probable that he had the intent to gratify his sexual desires when he sexually abused K.R. In addition, the storage of the Photoshopped images of K.R. alongside the child pornography undermines Ericsson's claim that he did not put the child pornography on his devices. Thus, the Photoshopped images were relevant to prove Ericsson's intent and knowledge.

Lastly, Ericsson argues the prejudicial effect substantially outweighed the probative value of the Photoshopped images. Ericsson contends evidence of adding nude breasts, genitals, and other sexualized features to photographs of K.R. would only suggest to the jury Ericsson's allegedly sexually deviant views which, in turn, likely induced the jury to believe Ericsson was more likely to commit the charged offenses. Even though these images would suggest sexual deviancy, the probative value was high because they show Ericsson's fixation on and sexualization of K.R. Even more so, the placement of these photographs undermined Ericsson's defense that he did not knowingly possess the child pornography. Accordingly, the district court did not abuse its discretion when it admitted the uncharged Photoshopped images of K.R. because any prejudice did not substantially outweigh the probative value.

16

### 4. Internet searches, bookmarks, and websites

Ericsson argues the district court erred in finding his Internet searches, bookmarks, and websites he visited had a non-propensity purpose and that the prejudice from this evidence did not substantially outweigh the probative value. Ericsson contends the evidence only proved bad character, but he does not explain why the district court erred in finding the Internet searches, bookmarks, and websites were relevant to prove Ericsson's intent.[11] Instead, Ericsson focuses on the danger of unfair prejudice when the jury heard terms including, but not limited to, "jailbait," "pimp daughter," and a website code that searches for stories about children under the age of twelve. There was also testimony about uploaded photographs of K.R. on Motherless--an explicit pornographic website. Ericsson also complains that the district court did not provide a limiting instruction to the jury for purposes of the admitted evidence although there is no indication in the record that he requested such an instruction.

The search terms, bookmarks, and websites were relevant to a non-propensity purpose and not so prejudicial to inflame the passions of the jury. As the Idaho Supreme Court noted, "the offensive nature of words alone are rarely enough to render them unfairly prejudicial in a trial for child sexual abuse." *McGrath*, 169 Idaho at 666, 501 P.3d at 356. Ericsson's Internet use is relevant to explain his intent when he sexually abused K.R. and his knowledge and intent to possess child pornography. The probative value of the evidence is high and is not substantially outweighed by the prejudicial nature of the evidence.[12] The district court did not abuse its discretion when it admitted the Internet searches, bookmarks, and websites.

### 5. Uncharged child pornography

Ericsson contends the uncharged child pornography evidence admitted pursuant to I.R.E. 404(b) only proved Ericsson's bad character in order to show that he acted in accordance with that character. Ericsson argues that even more concerning is the danger of unfair prejudice which substantially outweighed any probative value of the evidence. The State responds that the uncharged child pornography was relevant to prove Ericsson's intent, motive, knowledge, and

---

[11] A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

[12] One challenged exhibit showed a post on Motherless regarding Nicole with uploaded photographs of K.R. Although this went beyond just a list of sites or search terms, it dealt directly with the victim in this case; therefore, any prejudice did not substantially outweigh the high probative value of the exhibit.

17

absence of mistake; and the danger of unfair prejudice did not substantially outweigh the probative value.

Ericsson specifically challenges Exhibits 47-49. Exhibit 47 is a screenshot of the folder structure within the filing system located on Ericsson's external hard drive. Exhibit 48 shows the artifacts of a file of child pornography, and Exhibit 49 is an uncharged image of child pornography. The forensic examiner who acquired these exhibits from Ericsson's external hard drive did not find any evidence that the hard drive had been connected to the laptop post-May 2018. This evidence was relevant since the laptop had the remote access application and Ericsson's defense was that he was not the one who put the child pornography on his laptop. Ericsson possessing child pornography in a location that others could not remotely access (post-May 2018) made it more probable that he knew about the charged child pornography and that he intended to possess the child pornography. Therefore, the uncharged child pornography on the external hard drive was relevant to show intent, motive, knowledge, and absence of mistake.

Furthermore, the danger of unfair prejudice did not substantially outweigh the probative value of the uncharged child pornography evidence. As the State notes, it is unclear what prejudice Exhibit 47 (the folder structure) holds. Next, Exhibit 48 showed the artifacts of a file of child pornography, so there was no image or video of the actual child pornography. Exhibit 49, the single uncharged image, held the highest potential for unfair prejudice. The jury, however, was exposed to numerous graphic videos and images involving child pornography; this one image was a minimal addition to the other evidence and any prejudice therefrom did not substantially outweigh the probative value of proving Ericsson's intent, motive, knowledge, and absence of mistake. Consequently, the district court did not err when it admitted the uncharged child pornography evidence pursuant to I.R.E. 404(b).

C.    **Motion for Mistrial**

Ericsson asserts the district court erred by denying his motion for mistrial because the prosecutor introduced error when he elicited details about the Trick Photography story rather than talking about it generally as the State indicated it would do during the pretrial hearing on the admissibility of I.R.E. 404(b) evidence. The State responds that the district court did not err because the testimony did not constitute error or legal defect. We conclude that the district court did not err when it denied Ericsson's motion for mistrial.

In criminal cases, motions for mistrial are governed by I.C.R. 29.1. "A mistrial may be declared on motion of the defendant when there occurs during the trial, either inside or outside the courtroom, an error or legal defect in the proceedings, or conduct that is prejudicial to the defendant and deprives the defendant of a fair trial." I.C.R. 29.1(a).

Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

The threshold inquiry on appeal following a motion for a mistrial is whether the State introduced error. *State v. Richardson*, 168 Idaho 25, 30, 478 P.3d 754, 759 (Ct. App. 2020). During the pretrial hearing, Ericsson requested an explicit order from the district court about the Trick Photography rape fantasy story. Ericsson claimed that the Trick Photography story was highly prejudicial given that the story was about rape, which was not any alleged conduct in this case. The prosecutor proposed he would introduce the story generally, and the district court ruled that:

| | |
|---|---|
| PROSECUTOR: | I intended to discuss them generally. I don't intend to even admit the story as an exhibit, but just have those who found them talk about them generally. But specifically there was one dealing with a girl named [C.][13] who was 12 years old, who was a model, who was taken to a photo shoot where she was sexualized because that's highly relevant to the facts. |
| COURT: | I think that more narrow purpose is fair because it directly ties to the victim in this particular case and reflects what is legitimately present in this case. And it does seem to me that its probative value far outweighs any prejudicial effect, so I will permit that . . . . |
| PROSECUTOR: | I will limit it to how I just said it. |

---

[13] The victim, K.R., commonly goes by C.

| COURT: | Okay. |
|---|---|
| PROSECUTOR: | I will just generally talk about it. |
| COURT: | And if you're going to depart from that more limited approach, which I think is much more careful and avoids improper issues, I think for any reason it becomes relevant to broaden that, draw my attention to it outside the presence of the jury so we can have a discussion, so that the defense has a fair chance to talk about it and I have a better picture of why more than that would be relevant. I could see why that is relevant and probative and not improperly prejudicial. So I will count on you staying confined to that level, and then if there's some reason to depart from that, we'll have a discussion outside the presence of the jury so I can get everybody's input. |

During the trial, the State elicited the following testimony from Detective Brady:

| PROSECUTOR: | Thank you.<br>Who was the child victim in this story Trick Photography? |
|---|---|
| BRADY: | [C.] was the name. |
| PROSECUTOR: | Okay. And was she described as 12 years old? |
| BRADY: | Yes, she was. |
| PROSECUTOR: | Was she being described as being 4' 10" to 5 feet tall? |
| BRADY: | Yes, she was. |
| PROSECUTOR: | And having sandy-blond hair that wasn't curly, but wavy? |
| BRADY: | Correct. |
| PROSECUTOR: | And just generally--very generally, what was the story about? |
| BRADY: | Generally, the story was a father taking this character [C.] to a photo shoot. As the story progresses, she's talked into progressively taking her clothes off, having nude pictures of her. And then eventually she's sexually assaulted. |

Outside the presence of the jury, Ericsson moved for a mistrial alleging the State defied the district court's order by eliciting testimony beyond what was approved during the pretrial hearing. Ericsson argued the details about the child's height, hair, and father went beyond what the State indicated (during the pretrial conference) would be discussed at trial. The district court denied Ericsson's motion for a mistrial, ruling: "I don't think that the State has improperly departed from what I previously said. And I think that the evidence that has been elicited is relevant to the issues in the case, and so I'm not going to grant a mistrial."

On appeal, Ericsson argues the alleged additional, inflammatory details defied the district court's order and were only relevant for propensity purposes. The State contends there was no error because the prosecutor never departed from the generalized description during trial. The

20

State maintains Detective Brady testified to the general characteristics of the fictional victim and a succinct summary of the story's plot without providing specific, graphic details. The State argues Ericsson's concern during the pretrial hearing was the graphic details and the rape in the story--all of which were avoided during trial. Lastly, the State argues the additional details were admissible because they were highly probative to show Ericsson's intent and knowledge.

The district court did not err when it denied Ericsson's motion for mistrial because there was no error or legal defect. Ericsson claims error because the prosecutor did not elicit the exact description that was provided during the pretrial hearing. During pretrial, Ericsson's primary concern was the graphic details of the rape in the story because rape was not at issue in this case. The prosecutor made it clear the story would be generalized to avoid the graphic details but also emphasized the story was highly relevant due to the connection between K.R. and the victim in the story. Eliciting details about the victim in the story to show the parallels between the victim and K.R. was not in contravention of the district court's pretrial ruling.

Furthermore, there was no error because the evidence was highly relevant and admissible. As the State explained during the pretrial hearing, the victim in the story had strong parallels to K.R.: same nickname; same age as when K.R. was sexually abused; same hair color; same height; same aspirations to be a model; and a similarly involved father figure. The details in the story made it more probable that Ericsson had the intent of sexual gratification when he sexually abused K.R. since the story had similarities to K.R. With no error, there were no grounds for a mistrial; as such, the district court did not err when it denied Ericsson's motion for a mistrial.

Even if this Court assumed error, the State has proven harmless error. The additional details did not rise to the level of depriving Ericsson of a fair trial. The probative force of the additional details was minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error. As such, the district court did not err when it denied Ericsson's motion for mistrial.

## D.    Cumulative Error Doctrine

Ericsson also contends that the cumulative error doctrine applies here, necessitating a reversal of his conviction. Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). However, a necessary predicate to the application of

21

the doctrine is a finding of more than one error. *Id*. Because Ericsson has failed to demonstrate at least two errors, he is not entitled to relief under the cumulative error doctrine.

## III.

## CONCLUSION

The district court did not abuse its discretion when it denied Ericsson's motion to sever. Nor did the district court abuse its discretion when it admitted all the challenged I.R.E. 404(b) evidence Ericsson raises on appeal. Lastly, the district court's denial of Ericsson's motion for mistrial was not erroneous. Ericsson has failed to show error by the district court and has, therefore, failed to show cumulative error. Accordingly, we affirm Ericsson's judgment of conviction.

Chief Judge LORELLO and Judge BRAILSFORD **CONCUR**.